IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT IN
AND FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO.: 16-016364 CA 01

SOUTH BEACH GROUP HOTELS, INC.,
METROPOLE HOTEL APARTMENTS, LLC,
MUSEUM WALK APARTMENTS, LLC,
and CARLOS FERNANDO VICTORIA,

      Plaintiffs,

v.

JAMES RIVER INSURANCE, CO.,
a Virginia Corporation and
TERRANCE WEST, solely as a
Necessary and indispensable party,

      Defendants.

_____/

**SUMMONS**
**SERVICE ON A CORPORATION**

THE STATE OF FLORIDA

TO EACH SHERIFF OF THE STATE:  You are commanded to serve this Summons and
Complaint in this lawsuit on the above-named Defendant.

TO:    James River Insurance Co., a Virginia Corporation
       6641 West Broad Street, Suite 300
       Richmond, VA 23230

**IMPORTANT**

    A lawsuit has been filed against you.  You have 20 calendar days after this
summons is served on you to file a written response to the attached Complaint with the
clerk of this court.  A phone call will not protect you.  Your written response, including
the case number given above and the names of the parties, must be filed if you want the
court to hear your side of the case.  If you do not file your response on time, you may lose
the case, and your wages, money, and property may thereafter be taken without further
warning from the court.  There are other legal requirements.  You may want to call an
attorney right away.  If you do not know an attorney, you may call an attorney referral
service or a legal aid office (listed in the phone book).

1

If you choose to file a written response yourself, at the same time you file your written response to the court, located at:

        Clerk of Court
        Miami-Dade County Courthouse
        73 West Flagler Street
        Miami, Florida 33130

        You must also mail or take a copy of your written response to the "Plaintiffs Attorney" named below.

Joshua M. Entin, Esquire
Entin & Della Fera, P.A.
633 S. Andrews Avenue, Suite 500
Fort Lauderdale, Florida 33301
Telephone    : (954) 761-7201
Facsimile     : (954) 764-2443
E-Mail: Josh@entinlaw.com

JUL 11 2016

Dated this 27th day of June, 2016

                              CLERK OF THE COURT

                                      YADIRA MULKEY
                    By: _____
                             Deputy Clerk

**IMPORTANTE**

Usted ha sido demandado legalmente.  Tiene 20 dias, contados a partir del recibo de esta notificacion, para contestar la demanda adjunta, por escrito, y presentarla ante este tribunal.  Una llamada telefonica no lo protegera.  Si usted desea que el tribunal considere su defensa, debe presentar su respuesta por escrito, incluyendo el numero del caso y los nombres de las partes interesadas.  Si usted no contesta la demanda a tiempo, pudiese perder el caso y podria ser despojado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal.  Existen otros requisitos legales.  Si lo desea, puede usted consultar a un abogado inmediatamente.  Si no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparecen en la quial telefonica.

Si desea responder a la demanda por su cuenta, al mismo tiempo en que presenta sus respuesta ante el tribunal, debera usted enviar por correo o entregar una copia de su respuesta a la persona denominada abajo como "Plaintiff/Plaintiff's Attorney" (Demandante o Abogado del Demandante).
IMPORTANT

Des poursuites judicares ont ete entreprises contre vous.  Vous avex 20 jours consecutifs a partir de la date de l'assignation de cette citation pour deposer une response ecrite a la plainte ci-jointe aupres de ce tribunal.  Un simple coup de telephone est insuffisant pour vous proteger.  Vous estes oblige de deposer votre response ecrite, avec mention duu numero de dossier ci-dessus et du nom des parties nomees ici, si vous souhaitez que le tribunal entende votre cause.  Si vous ne deposex pas votre response ecrite dans larelai requis, vous risquez de perdre la cause sinai que votre salaire, votre argent, et vos biens peuvent etre saisis par la suite, sans aucun preavis ulterieur du tribunal.  Il y a d'autres obligations juridiques et vous pouvez requerir les services immediate d'un avocat.  Si vous ne connaissez pas d'avocat, vous pourrier telephoner a un service de reference d'avocate ou a un bureau d'assistance juridique (figurant a l'annuaire de telephones).

Si vous choisinsez de deposer vous-memo une response scrite, il vous faudra eqalement, en memo temps que cette formalite, faire parvenir ou expedier une copie de votre reponse scite au "Plaintiff/Plaintiff's Attorney" (Plaignant ou a son avocat) nomme ci-dessous.

Filing # 43269846 E-Filed 06/27/2016 03:25:21 PM

IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT IN
AND FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO.:

SOUTH BEACH GROUP HOTELS, INC.,
METROPOLE HOTEL APARTMENTS, LLC,
MUSEUM WALK APARTMENTS, LLC,
and CARLOS FERNANDO VICTORIA,

       Plaintiffs,

v.

JAMES RIVER INSURANCE, CO.,
a Virginia Corporation and
TERRANCE WEST, solely as a
Necessary and indispensable party,

       Defendants.

_____/

## COMPLAINT FOR DECLARATORY RELIEF

Plaintiffs, SOUTH BEACH GROUP HOTELS, INC., ("SBGH"), METROPOLE HOTEL

APARTMENTS, LLC., ("Metropole"), MUSEUM WALK APARTMENTS, LLC., ("Museum

Walk") and CARLOS FERNANDO VICTORIA ("Carlos Fernando") (collectively "Declaratory

Action Plaintiffs"), by and through undersigned counsel, hereby file this Complaint for

Declaratory Relief against Defendants JAMES RIVER INSURANCE, CO., ("James River") and

TERRANCE WEST ("West") (who is named in this action solely as a necessary and indispensable

party as to the resolution of Count I of the Complaint because West is a potential third-party

beneficiary to the liability insurance policy at issue in this case), and in support thereof state as

follows:

1

## JURISDICTION AND VENUE

1.      This is an action for declaratory relief pursuant to Fla. Stat. § 86.011 relating to the determination of insurance coverage pursuant to a Commercial General Liability Insurance Policy.

2.      The Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, has jurisdiction pursuant to Fla. Stat. § 47.011 because a substantial portion of the negotiations, anticipated performance, and execution of the insurance policy at issue occurred in Miami-Dade County, Florida.

3.      At all times material hereto, Plaintiff SOUTH BEACH GROUP HOTELS, INC., was a Florida corporation, organized and existing according to the laws of the State of Florida, with its principal place of business located in Miami Beach, Miami-Dade County, Florida.

4.      At all times material hereto, Plaintiff METROPOLE HOTEL APARTMENTS, LLC., was a Florida corporation, organized and existing according to the laws of the State of Florida, with its principal place of business located in Miami Beach, Miami-Dade County, Florida.

5.      At all times material hereto, Plaintiff MUSEUM WALK APARTMENTS, LLC., was a Florida corporation, organized and existing according to the laws of the State of Florida, with its principal place of business located in Miami Beach, Miami-Dade County, Florida.

6.      At all times material hereto, Plaintiff CARLOS FERNANDO VICTORIA was an individual residing in Miami-Dade County, Florida and is otherwise *sui juris*. At all times material hereto, Carlos Fernando was an employee of Metropole and acting within the scope of his employment.

7.      At all times material hereto, Defendant JAMES RIVER INSURANCE, CO., was a Virginia corporation duly licensed to transact business in the State of Florida as providers of

2

commercial liability insurance for a profit, and maintained agents for the transaction of its customary business throughout the State of Florida including Miami-Dade County, Florida.

8.    At all times material hereto, Defendant TERRANCE WEST is a necessary and indispensable party to Count I of the Complaint because he is making an individual claim against SBGH for damages, and as such, is a potential third-party beneficiary of the liability insurance policy at issue in this case, and there has an interest in the resolution of the instant Declaratory Action. Additionally, it is verily believed that West is a resident of Ellicott City, Maryland and is otherwise *sui juris*.

## GENERAL ALLEGATIONS

9.    Beginning on December 1, 2015, SBGH, Museum Walk and Metropole purchased a Commercial General Liability Insurance Policy (the "Policy"), from James River. A copy of the Policy is attached hereto as Exhibit "A."

10.    SBGH, Museum Walk and Metropole paid all policy premiums required to obtain and maintain this coverage with James River, and this coverage was purchased and placed in effect for a period beginning December 1, 2015.

11.    On April 6, 2016, a lawsuit was filed against SBGH under the caption of *Terrance West v. South Beach Group Hotels, Inc., and Carlos Fernando Victoria.*, Case No.: 16-008712-CA-01 ("West Case").

12.    West, who was a guest at the Metropole South Beach Hotel ("Metropole Hotel") on February 27, 2016, alleges one count of Negligence against SBGH and a second count of Negligence against Carlos Fernando for negligently allowing two unauthorized women to gain access to West's suite and steal West's belongings and for not preventing a "potentially armed man" from entering the Metropole Hotel and robbing West in his hotel room.

3

13.     Subsequently, on May 9, 2016, West filed an Amended Complaint. A copy of the Amended Complaint is attached hereto as Exhibit "B." The Amended Complaint maintains the same general allegations as the original Complaint, but adds a third count for Negligent Infliction of Emotional Distress alleging West incurred physical injuries that were caused by the psychological trauma, which resulted from the alleged robbery of West in his hotel room.

14.     Prior to the filing of the Amended Complaint, Declaratory Action Plaintiffs sought coverage with James River as to the lawsuit filed by West.

15.     On May 10, 2016, James River sent an email with an attached letter (the "Denial Letter") to Declaratory Action Plaintiffs denying coverage and defense for Declaratory Action Plaintiffs pursuant to the coverage exclusions contained in the Policy. A copy of the May 10, 2016, email is attached hereto as Exhibit "C" and a copy of the Denial Letter is attached hereto as Exhibit "D."

16.     In the May 10, 2016, email, James River acknowledges that it had received the Amended Complaint, but failed to address the Amended Complaint's additional allegations in the Denial Letter. Accordingly, James River improperly denied coverage under the Policy without expressly addressing in writing whether Declaratory Action Plaintiffs are entitled to coverage based on West's claim for Negligent Infliction of Emotional Distress.

17.     In denying coverage under the Policy, James River relied on the following Policy exclusions:

   a) Section 1(b)(1) of the Policy because the Complaint as interpreted by James River, does not allege "bodily injury" or "property damage" caused by an "occurrence";

   b) The "Fiduciary Exclusion" of the Policy because the Complaint as interpreted by James River, "is solely to recover for stolen personal belongings";

   c) Section (j)(4) of the Policy, which excludes coverage for property damage to the "personal property in the care, custody or control of the insured";

4

    d) Section 2(a), which excludes coverage for "bodily injury or property damage expected or intended from the standpoint of the insured";

    e) The "Professional Liability Exclusion" of the Policy, which denies coverage for any failure to render any type of professional service;

    f) With respect to Carlos Fernando, James River excludes coverage based on its assertion Carlos Fernando was "not acting within the scope of his employment at the time of the incident"; and

    g) The Policy's catch all exclusion, which states "where there is not coverage under this policy, there is no duty to defend."

Exhibit A.

    18.    Here, Declaratory Action Plaintiffs challenge James River's interpretation of the Policy based on the following ambiguities contained in the Policy:

    a) West suffered "property damage," which was caused by an "occurrence" as defined by the Policy because the theft of his items resulted in the "loss of use of tangible property that is not physically injured" which is covered by the Policy;

    b) The Amended Complaint is not "solely to recover for stolen personal belongings" as in Count III West seeks damages for "physical injury caused by psychological trauma." Further, the Amended Complaint does not allege a fiduciary relationship between Declaratory Action Plaintiffs and West and the allegations against Declaratory Action Plaintiffs are based on theories of negligence and not theft/conversion;

    c) The Policy does not define the term "care, custody or control" and it is clear the property at issue was in the custody of West as according to the Amended Complaint the property was taken from his hotel room and his suitcase located within the hotel room;

    d) The Policy does not define the terms "expected or intended" and the Amended Complaint does not allege the harm was foreseeable to Declaratory Action Plaintiffs or that Declaratory Action Plaintiffs intended to cause the alleged harm;

    e) The harm alleged in the Amended Complaint was not caused by any professional malpractice as the term is commonly used as the tasks performed by Declaratory Action Plaintiffs did not require any professional skill;

    f) Carlos Fernando was acting within the scope of his employment when the alleged acts of negligence occurred as the events occurred while Carlos Fernando was

performing his shift and assigned duties while on the premises of the Metropole Hotel; and

g) The Policy's catch all exclusion cannot possibly apply because Declaratory Action Plaintiffs are entitled to coverage under the Policy.

19.     As of the filing of this Complaint, James River is refusing to provide a defense to the West Case and is refusing to provide coverage for any potential losses associated with the case.

20.     Declaratory Action Plaintiffs thus seek declaratory judgment to determine James River's duty to defend Declaratory Action Plaintiffs in the West Case, and to cover the potential loss asserted in the West Case.

21.     The Policy was in good standing and in effect at the time of the alleged loss described in the West Case.

## COUNT I
## DECLARATORY RELIEF
### (Against James River)

22.     Declaratory Action Plaintiffs re-allege and re-affirm the allegations contained in paragraphs 1 through 21, as though fully alleged herein, and further allege as follows:

23.     This is an action for declaratory judgment pursuant to Fla. Stat. § 86.011 with regard to the Policy purchased by Declaratory Action Plaintiffs from James River and a determination of the rights and obligations under the Policy including the duty to defend against this pending claim, and to provide liability coverage for this claim as required by the Policy.

24.     James River is improperly refusing to provide coverage under its Policy in order to avoid defending and potentially paying claims against Declaratory Action Plaintiffs.

25.     Declaratory Action Plaintiffs are unsure of their rights under the Policy and of James Rivers' obligations under the Policy and Florida law. As such, Declaratory Action Plaintiffs are in need of the present declaration of rights under the Policy and Florida law.

6

26.     The facts necessary for this Court to render Declaratory Action Plaintiffs' declaration of rights are set forth in this Complaint and/or ascertainable by this Court.

27.     Declaratory Action Plaintiffs' right to recovery under the Policy is dependent upon this Court's findings of fact and/or application of Florida law.

28.     James Rivers' interest in this declaration is actual, present, adverse, and antagonistic in fact and/or law to Declaratory Action Plaintiffs' interest.

29.     All parties whose interests are adverse and antagonistic are before this Court, by proper process. Declaratory Action Plaintiffs seek relief in order to enforce its contractual/or legal rights to coverage and a defense to the claims for damage made individually by West, and not merely to seek legal advice from this Court.

30.     Declaratory Action Plaintiffs have been forced to retain the undersigned counsel to enforce their rights against James River, for benefits and are thereby obligated to pay reasonable attorneys' fees and costs.

31.     Declaratory Action Plaintiffs are further entitled to prevailing party attorney's fees pursuant to Fla. Stat. § 627.428 and the Policy.

**WHEREFORE,** Declaratory Action Plaintiffs SOUTH BEACH GROUP HOTELS, INC., METROPOLE HOTEL APARTMENTS, LLC., MUSEUM WALK APARTMENTS, LLC., ("Museum Walk") and CARLOS FERNANDO VICTORIA hereby demand judgment against Defendant JAMES RIVER INSURANCE, CO., and request the following declaratory relief:

a)      Find that Declaratory Action Plaintiffs are entitled to the liability coverage and defense afforded to them under the Policy purchased from James River as it relates to the respective claims addressed *supra,* and that James River has an obligation to defend those claims and provide coverage for those or any other claims which may arise from the covered period;

b)      Award Declaratory Action Plaintiffs the declaratory relief requested;

c)      Enforce the terms, conditions, rights and/or obligations under the Policy in favor of Declaratory Action Plaintiffs and against James River including the obligation to provide a legal defense to those claims and lawsuits and to provide coverage for any substantial losses which were proximately caused by any negligence of Declaratory Action Plaintiffs;

d)      Award Declaratory Action Plaintiffs their attorneys' fees pursuant to Fla. Stat. § 627.428 and the Policy, and under any other Florida Statute or rule authorizing an award of fees, for the necessity of this action and in defending the underlying action and;

e)      Grant any other relief this Court deems just and appropriate.

## COUNT II
## BREACH OF CONTRACT
### (Against James River)

32.     Declaratory Action Plaintiffs re-allege and re-affirm the allegations contained in paragraphs 1 through 21, as though fully alleged herein, and further allege as follows:

33.     SBGH, Museum Walk and Metropole purchased the Policy from James River.

34.     SBGH, Museum Walk and Metropole paid all policy premiums required to obtain and maintain this coverage with James River, and this coverage was in effect at the time of the alleged loss.

35.     Declaratory Action Plaintiffs performed all conditions necessary to invoke coverage under the Policy.

36.     In refusing to provide a defense to the West Case or to provide coverage for losses and for denying coverage without provided a written assessment of the Policy's application to the Amended Complaint, James River has breached the Policy.

37.     As a result of the breach, Declaratory Action Plaintiffs have been damaged.

8

**WHEREFORE,** Declaratory Action Plaintiffs SOUTH BEACH GROUP HOTELS, INC., METROPOLE HOTEL APARTMENTS, LLC., MUSEUM WALK APARTMENTS, LLC., ("Museum Walk") and CARLOS FERNANDO VICTORIA hereby demand judgment against Defendant JAMES RIVER INSURANCE. CO., for: 1) damages; 2) costs of suit; 3) interest; 4) attorney's fees pursuant to Fla. Stat. § 627.428 and the Policy; and 5) any such other relief as this Court deems equitable and just.

Dated this 27th day of June, 2016.

Respectfully Submitted,
By: /s/Joshua M. Entin
JOSHUA M. ENTIN, ESQ.
Fla. Bar No:  493724
JOSEPH E. SOMAKE, ESQ.
Fla. Bar No: 0109271
ENTIN & DELLA FERA, P.A.
633 S. ANDREWS AVENUE, SUITE 500
Ft. Lauderdale, Florida 33301
Tel:   (954) 761-7201
Fax:   (954) 764-2443
E-mail: josh@entinlaw.com
**Attorney for Declaratory Action Plaintiffs**

9



**RYAN™ TURNER SPECIALTY**

## Florida Face Page

**Insured's Name:** Museum Walk Apartments LLC, Chesterfield Hotel LLC ETAL

**Policy Number:** 00060233-2

**UMR Number:**

**Policy Dates:** 12/1/2015 to 12/1/2016

**Surplus Lines Agent's Name:** Alan S. Goldfarb

**Surplus Lines Agent's Address:** 510 Vonderburg Drive Suite 214, Brandon, FL 33511

**Surplus Lines Agent's License Number:** A099212

**Producing Agent's Name:** Ronald Laster

**Producing Agent's Physical Address:** 8240 N.W. 52 Terrace Suite 408 Miami, FL 33166

**"THIS INSURANCE IS ISSUED PURSUANT TO THE FLORIDA SURPLUS LINES LAW. PERSONS INSURED BY SURPLUS LINES CARRIERS DO NOT HAVE THE PROTECTION OF THE FLORIDA INSURANCE GUARANTY ACT TO THE EXTENT OF ANY RIGHT OF RECOVERY FOR THE OBLIGATION OF AN INSOLVENT UNLICENSED INSURER."**

## "SURPLUS LINES INSURERS' POLICY RATES AND FORMS ARE NOT APPROVED BY ANY FLORIDA REGULATORY AGENCY."

**Premium:** $250,025.00

**TRIA/Terrorism:** REJECTED

**Fees:**
Carrier Installment Fee    $250.00
Policy Fee $35.00

**Taxes:**
Surplus Lines Tax   $12,515.50
Service Office Fee   $438.04

**Total Cost:** $263,263.54

**Surplus Lines Agent's Countersignature:**

_____ **"THIS POLICY CONTAINS A SEPARATE DEDUCTIBLE FOR HURRICANE OR WIND LOSSES, WHICH MAY RESULT IN HIGH OUT-OF-POCKET EXPENSES TO YOU."**

_____ **"THIS POLICY CONTAINS A CO-PAY PROVISION THAT MAY RESULT IN HIGH OUT-OF-POCKET EXPENSES TO YOU."**



# EXHIBIT "A"

# FLORIDA POLICYHOLDER NOTICE
## 626.924 (2)

This policy is issued by a nonadmitted or surplus lines insurer.  In order to comply with Florida Statutes, the following notice is given:

### **SURPLUS LINES INSURERS' POLICY RATES AND FORMS ARE NOT APPROVED BY ANY FLORIDA REGULATORY AGENCY.**

# COMMERCIAL GENERAL LIABILITY DECLARATIONS

**JAMES RIVER INSURANCE COMPANY**
**6641 WEST BROAD STREET, SUITE 300**
**RICHMOND, VA 23230**

**POLICY NUMBER**
**00060233-2**

1. **NAMED INSURED AND MAILING ADDRESS:**

   Museum Walk Apts LLC
   dba Tradewinds Apartment Hotel
   Sunset Apartments LLC
   808 Collins Avenue
   Miami Beach, FL 33139

   **PRODUCER:** 20385

   R-T Specialty, LLC (Brandon)
   510 Vonderburg Drive #214
   Brandon, FL 33511

2. **POLICY PERIOD:** From 12/01/2015 to 12/01/2016 12:01 A.M. Standard Time at your Mailing Address above.

**IN RETURN FOR THE PAYMENT OF THE PREMIUM, IN RELIANCE UPON THE STATEMENTS IN THE APPLICATION(S) AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.**

| LIMITS OF INSURANCE | | |
|---|---|---|
| EACH OCCURRENCE LIMIT | $ 1,000,000 | |
| DAMAGE TO PREMISES RENTED TO YOU LIMIT | $ 50,000 | Any one premises |
| MEDICAL EXPENSE LIMIT | Excluded | Any one person |
| PERSONAL & ADVERTISING INJURY LIMIT | $ 1,000,000 | Any one person or organization |
| GENERAL AGGREGATE LIMIT | $ 2,000,000 | |
| PRODUCTS/COMPLETED OPERATIONS AGGREGATE LIMIT | $ 2,000,000 | |

| RETROACTIVE DATE (CG 00 02 ONLY) |
|---|
| THIS POLICY IS ON A CLAIMS-MADE AND REPORTED BASIS WHICH PROVIDES LIABILITY COVERAGE ONLY IF A CLAIM IS FIRST MADE AND REPORTED DURING THE POLICY PERIOD OR ANY APPLICABLE EXTENDED REPORTING PERIOD.  THIS INSURANCE DOES NOT APPLY TO "BODILY INJURY", "PROPERTY DAMAGE" OR "PERSONAL AND ADVERTISING INJURY" WHICH OCCURS BEFORE THE RETROACTIVE DATE, IF ANY, SHOWN BELOW. |
| RETROACTIVE DATE:  **NONE, THIS IS NOT A CLAIMS MADE POLICY** |
| (ENTER DATE OR "NONE" IF NO RETROACTIVE DATE APPLIES) |

| DESCRIPTION OF BUSINESS |
|---|
| FORM OF BUSINESS:  Corporation |
| BUSINESS DESCRIPTION:  Hotels and Apartments |

| ALL PREMISES YOU OWN, RENT OR OCCUPY | |
|---|---|
| LOCATION NUMBER | ADDRESS OF ALL PREMISES YOU OWN, RENT OR OCCUPY |
| 1 | 855 Collins Avenue, Miami Beach, Fl 33139 |
| 2 | 835 Collins Avenue, Miami Beach, FL 33139 |
| 3 | 808 Collins Avenue, Miami Beach, FL 33139 |
| 4 | 844 Collins Avenue, Miami Beach, FL 33139 |
| 5 | 944 Washington Avenue, Miami Beach, FL 33139 |
| 6 | 320 24th Street, Miami Beach, FL 33140 |
| 7 | 2315 Pinetree Drive , Miami Beach, FL 33140 |
| 8 | 2335 Pinetree Drive, Miami Beach, FL 33140 |
| 9 | 2365-73 Pinetree Drive, Miami Beach, FL 33140 |
| 10 | 2370 Flamingo Drive, Miami Beach, FL 33140 |
| 11 | 2380 Flamingo Drive, Miami Beach, FL 33140 |
| 12 | 1545 Drexel Avenue, Miami Beach, FL 33139 |
| 13 | 1300 Pennsylvania Avenue, Miami Beach, FL 33139 |
| 14 | 841 Collins Avenue, Miami Beach, FL 33139 |
| 15 | 1732 and 1756 Collins Avenue, Miami Beach, FL 33139 |
| 16 | 2351-61 Pinetree Drive, Miami Beach, FL 33140 |
| 17 | 635 Collins Avenue, Miami Beach, FL 33139 |
| 18 | 1720 Collins Avenue, Miami Beach, FL 33139 |
| 19 | 2000 Liberty Avenue, Miami Beach, FL 33141 |
| 20 | 334 Arizona Street - 7 buildings, Hollywood, FL 33019 |
| 21 | 320 Arizona Street, Hollywood , FL 33019 |
| 22 | 323 Polk /street, Hollywood, FL 33019 |
| 23 | 1800 James Street, Miami Beach, FL 33139 |
| 24 | 318 20th Street - Buildings 1 &2 , Miami Beach, FL 33139 |
| 25 | 808 & 820 Collins Avenue, Miami Beach, FL 33139 |
| 26 | 1524 Lenox Avenue, Miami Beach, FL 33139 |
| 27 | 3720 Collins Avenue, Miami Beach, FL 33140 |
| 28 | 321 Polk Street , Hollywood, FL 33019 |
| 29 | 4332 Collins Avenue, Miami Beach, FL 33140 |
| 30 | 7710 Harding Avenue, Miami Beach, FL 33140 |
| 31 | 8100 Harding Avenue , Miami Beach , FL 33140 |
| 32 | 7500 Collins Avenue, Miami Beach, FL 33140 |
| 33 | 2401 Pinetree Drive, Miami Beach, FL 33140 |
| 34 | 310 Arizona Street, Hollywood, FL 33019 |
| 35 | 316 Arizona Street, Hollywood, FL 33019 |
| 36 | 8320 Harding Avenue, Miami Beach, FL 33141 |
| 37 | 8101 Harding Avenue, Miami Beach, FL 33141 |
| 38 | 7600 Harding Avenue, Miami Beach, FL 33141 |
| 39 | 240 76th Street, Miami Beach, FL 33141 |

| CLASSIFICATION AND PREMIUM | | | | | |
|---|---|---|---|---|---|
| LOCATION NUMBER | CLASSIFICATION | CODE NO. | PREMIUM BASE | RATE $ | ADVANCE PREMIUM $ |
| 1 | Restaurants-with alcohol 30% to/incl 75% of annual reciepts-without dance floor (rates eff after 07/02) | 16916 | 50,000 Gross Sales | 9.32 | 466.00 |
| 1 | Hotels and Motels-without pools or beaches-less than four stories | 45192 | 800,000 Gross Sales | 16.28 | 13,024.00 |
| 2 | Hotels and Motels-without pools or beaches-less than four stories | 45192 | 200,000 Gross Sales | 16.28 | 3,256.00 |
| 3 | Hotels and Motels-without pools or beaches-less than four stories | 45192 | 800,000 Gross Sales | 16.28 | 13,024.00 |
| 4 | Hotels and Motels-without pools or beaches-less than four stories | 45192 | 600,000 Gross Sales | 16.28 | 9,768.00 |
| 5 | Restaurants-with alcohol 30% to/incl 75% of annual reciepts-without dance floor | 16916 | 45,000 Gross Sales | 9.31 | 419.00 |
| 5 | Hotels and Motels-without pools or beaches-less than four stories | 45192 | 400,000 Gross Sales | 16.28 | 6,512.00 |
| 6 | Apartment Hotels four or more stories | 60016 | 10 Units | 158.30 | 1,583.00 |
| 7 | Apartment Hotels four or more stories | 60016 | 22 Units | 158.32 | 3,483.00 |
| 8 | Apartment Hotels four or more stories | 60016 | 24 Units | 158.33 | 3,800.00 |
| 9 | Apartment Hotels four or more stories | 60016 | 24 Units | 158.33 | 3,800.00 |
| 10 | Swimming Pools | 48925 | 1 Per Pool | 1045.00 | 1,045.00 |
| 10 | Apartment Hotels four or more stories | 60016 | 28 Units | 158.36 | 4,434.00 |
| 11 | Apartment Hotels four or more stories | 60016 | 20 Units | 158.35 | 3,167.00 |
| 12 | Apartments | 60010 | 18 Units | 135.72 | 2,443.00 |
| 13 | Apartments | 60010 | 48 Units | 135.71 | 6,514.00 |
| 14 | Hotels and Motels-without pools or beaches-less than four stories | 45192 | 200,000 Gross Sales | 16.28 | 3,256.00 |

| 15 | Restaurants-with alcohol 30% to/incl 75% of annual reciepts-without dance floor | 16916 | 250,000 Gross Sales | 9.30 | 2,326.00 |
|----|----|----|----|----|----|
| 15 | Hotels and Motels-with pools or beaches-less than four stories | 45190 | 2,400,000 Gross Sales | 22.84 | 54,816.00 |
| 15 | Swimming Pools | 48925 | 1 Per Pool | 1045.00 | 1,045.00 |
| 16 | Apartment Hotels four or more stories | 60016 | 30 Units | 158.33 | 4,750.00 |
| 17 | Apartment Hotels four or more stories | 60016 | 42 Units | 158.33 | 6,650.00 |
| 17 | Building or Premises- bank or office- mercantile or manufacturing (lessor's risk only)-Other than Not-For --Profit | 61212 | 3,170 Area | 143.85 | 456.00 |
| 18 | Hotels and Motels-with pools or beaches-less than four stories | 45190 | 500,000 Gross Sales | 22.84 | 11,420.00 |
| 18 | Swimming Pools | 48925 | 1 Per Pool | 1045.00 | 1,045.00 |
| 19 | Swimming Pools | 48925 | 1 Per Pool | 1045.00 | 1,045.00 |
| 19 | Apartment Hotels four or more stories | 60016 | 52 Units | 158.35 | 8,234.00 |
| 20 | Restaurants-with alcohol 30% to/incl 75% of annual reciepts-without dance floor | 16916 | 45,000 Gross Sales | 8.31 | 374.00 |
| 20 | Hotels and Motels-with pools or beaches-less than four stories | 45190 | 200,000 Gross Sales | 17.51 | 3,502.00 |
| 21 | Hotels and Motels-without pools or beaches-less than four stories | 45192 | 20,000 Gross Sales | 16.30 | 326.00 |
| 22 | Boarding or Rooming Houses | 61000 | 18 Units | 164.56 | 2,962.00 |
| 23 | Apartment Hotels four or more stories | 60016 | 47 Units | 135.70 | 6,378.00 |
| 24 | Restaurants-with alcohol 30% to/incl 75% of annual reciepts-without dance floor | 16916 | 50,000 Gross Sales | 9.32 | 466.00 |
| 24 | Hotels and Motels-with pools or beaches-less than four stories | 45190 | 400,000 Gross Sales | 22.84 | 9,136.00 |
| 24 | Swimming Pools | 48925 | 1 Per Pool | 1045.00 | 1,045.00 |
| 25 | Swimming Pools | 48925 | 1 Per Pool | 1045.00 | 1,045.00 |

MC0001US 05-09                        Page 4 of 6

| 25 | Boarding or Rooming Houses | 61000 | 58 Units | 151.57 | 8,791.00 |
| 25 | Building or Premises- bank or office- mercantile or manufacturing (lessor's risk only)-Other than Not-For -Profit | 61212 | 3,876 Area | 143.96 | 558.00 |
| 26 | Restaurants-with alcohol 30% to/incl 75% of annual reciepts-without dance floor | 16916 | 40,000 Gross Sales | 9.30 | 372.00 |
| 26 | Apartments | 60010 | 18 Units | 135.72 | 2,443.00 |
| 27 | Restaurants-with alcohol 30% to/incl 75% of annual reciepts-without dance floor | 16916 | 360,000 Gross Sales | 9.30 | 3,348.00 |
| 27 | Hotels and Motels-with pools or beaches-four stories or more | 45191 | 500,000 Gross Sales | 13.91 | 6,955.00 |
| 27 | Swimming Pools | 48925 | 1 Per Pool | 1045.00 | 1,045.00 |
| 28 | Boarding or Rooming Houses | 61000 | 36 Units | 164.56 | 5,924.00 |
| 29 | Parking -- private | 46622 | 2,500 Area | 64.40 | 161.00 |
| 30 | Apartments | 60010 | 16 Units | 135.69 | 2,171.00 |
| 31 | Apartments | 60010 | 14 Units | 135.71 | 1,900.00 |
| 32 | Apartments | 60010 | 40 Units | 135.70 | 5,428.00 |
| 33 | Halls-Other than Not-For-Profit | 44276 | 6,583 Area | 450.10 | 2,963.00 |
| 34 | Hotels and Motels-without pools or beaches-less than four stories | 45192 | 40,000 Gross Sales | 16.28 | 651.00 |
| 35 | Apartment Hotels four or more stories | 60016 | 1 Unit | 158.00 | 158.00 |
| 36 | Apartments | 60010 | 18 Units | 135.70 | 2,443.00 |
| 37 | Building or Premises- office- Other than Not-For-Profit | 61226 | 903 Area | 458.47 | 414.00 |
| 38 | Apartments | 60010 | 10 Units | 135.70 | 1,357.00 |
| 39 | Apartments | 60010 | 40 Units | 135.70 | 5,428.00 |
|  | Hired Auto |  |  |  | 250.00 |

| | Non-Owned Auto | | | | 250.00 |
|---|---|---|---|---|---|
| | | TOTAL PREMIUM (SUBJECT TO AUDIT) | | | $250,025.00 |
| If checked, premium shown is flat and not subject to audit ☒ | | Company Fee | | | $    250.00 |
| TOTAL SHOWN IS PAYABLE: | | AT INCEPTION | | | $250,275.00 |
| | | | | | |
| AUDIT PERIOD (IF APPLICABLE) | | FREQUENCY:  Not Applicable | | | |

| ENDORSEMENTS |
|---|
| ENDORSEMENTS ATTACHED TO THIS POLICY: |
| See attached schedule A – Schedule of Forms |

**THESE DECLARATIONS, TOGETHER WITH THE COMMON POLICY CONDITIONS AND COVERAGE FORM(S) AND ANY ENDORSEMENT(S), COMPLETE THE ABOVE NUMBERED POLICY.**

# SCHEDULE A

FORMS AND ENDORSEMENTS THAT APPLY TO THIS POLICY:

**POLICY NO.  00060233-2**

| FORM NUMBER | DESCRIPTION |
|---|---|
| PN-01US-0410 | Florida Policyholder Notice |
| MC0001US-0509 | Commercial General Liability Declarations |
| GC0001US-0304 | Schedule A |
| CG0001-1207 | Commercial General Liability Coverage Form |
| AP2103US-0607 | Minimum Policy Premium |
| AP5011US-1203 | Policy Limitation - Amended Aggregate Limits of Insurance per Location |
| MC2105US-1113 | Deductible Endorsement - Damages and Expenses |
| MC2126US-0913 | Premium Base Endorsement |
| CG2407-0196 | Products/Completed Operations Hazard Redefined |
| AP2126US-0108 | Hired Auto Liability |
| AP2129US-0812 | Non-Owned Auto Liability - Including Loading and Unloading |
| AP1005US-0705 | Additional Named Insured Endorsement |
| AP2003US-0403 | Additional Insured - Lessors of Leased Equipment |
| AP2009US-0410 | Additional Insured as Required by Written Contract |
| CG2018-1185 | Additional Insured - Mortgagee, Assignee, Receiver |
| AP1013US-1005 | Premium Audit Conditions Amended |
| AP2104US-1012 | Common Policy Conditions |
| AP2107US-0403 | Binding Arbitration |
| AP2008US-0712 | Limitation of Coverage to Designated Premises |
| CG0068-0509 | Recording and Distribution of Material or Information in Violation of the Law Exclusion |
| CG2136-0305 | Exclusion - New Entities |
| CG2147-1207 | Employment-Related Practices Exclusion |
| CG2167-1204 | Fungi or Bacteria Exclusion |
| IL0021-0908 | Nuclear Energy Liability Exclusion |
| AP2029US-1210 | Combined Policy Exclusions |
| AP2031US-0411 | Exclusion - Cross Suits |
| AP2049US-1006 | Exclusion - Diving Boards and Slides |
| AP2061US-0408 | Absolute Pollution and Pollution Related Liability Exclusion - with Hostile Fire/HVAC Exceptions |
| GC2128US-1012 | Exclusion - Liquor Liability |
| GC2131US-0403 | Fiduciary Exclusion |
| MC2139US-0403 | Exclusion - Coverage C - Medical Payments |
| AP1014US-1005 | Florida Policy Changes |
| AP5027R-0115 | Rejection of Coverage for Certified Acts of Terrorism Coverage |
| CG2175-0115 | Exclusion of Certified Acts of Terrorism and Exclusion of Other Acts of Terrorism Committed Outside the United States |
| AP0100US-0403 | Privacy Policy |

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II** – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** – Definitions.

## SECTION I – COVERAGES

## COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

      (1) The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

      (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

      No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

   b. This insurance applies to "bodily injury" and "property damage" only if:

      (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

      (2) The "bodily injury" or "property damage" occurs during the policy period; and

      (3) Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

   c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

   d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

      (1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

      (2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

      (3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

 © ISO Properties, Inc., 2006

e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

**2. Exclusions**

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

© ISO Properties, Inc., 2006

**f. Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

(i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

(i) Any insured; or

(ii) Any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

(i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

**(2)** Any loss, cost or expense arising out of any:

    **(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

    **(b)** Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

    **(a)** Less than 26 feet long; and

    **(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of:

    **(a)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged; or

    **(b)** the operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j. Damage To Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of the insured;

© ISO Properties, Inc., 2006
CG 00 01 12 07   □

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III -- Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**q. Distribution Of Material In Violation Of Statutes**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

(1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

(2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

(3) Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section III – Limits Of Insurance.

## COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY

### 1. Insuring Agreement

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

   **(1)** The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

   **(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

### 2. Exclusions

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g. Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

**i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

   **(1)** Advertising, broadcasting, publishing or telecasting;

   **(2)** Designing or determining content of websites for others; or

© ISO Properties, Inc., 2006

(3) An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a.,** **b.** and **c.** of "personal and advertising injury" under the Definitions Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-Related**

Any loss, cost or expense arising out of any:

(1) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**o. War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**p. Distribution Of Material In Violation Of Statutes**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

(1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

(2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

(3) Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

**COVERAGE C MEDICAL PAYMENTS**

**1. Insuring Agreement**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations;

provided that:

(a) The accident takes place in the "coverage territory" and during the policy period;

(b) The expenses are incurred and reported to us within one year of the date of the accident; and

(c) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

(1) First aid administered at the time of an accident;

(2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions**

We will not pay expenses for "bodily injury":

**a. Any Insured**

To any insured, except "volunteer workers".

**b. Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c. Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d. Workers Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e. Athletics Activities**

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

**f. Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

**g. Coverage A Exclusions**

Excluded under Coverage **A.**

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

   **a.** All expenses we incur.

   **b.** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

   **c.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

   **d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

   **e.** All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

   **f.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

   **g.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

   These payments will not reduce the limits of insurance. ·

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

   **a.** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

   **b.** This insurance applies to such liability assumed by the insured;

   **c.** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

   **d.** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

   **e.** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

   **f.** The indemnitee:

   (1) Agrees in writing to:

   (a) Cooperate with us in the investigation, settlement or defense of the "suit";

   (b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

   (c) Notify any other insurer whose coverage is available to the indemnitee; and

   (d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

   (2) Provides us with written authorization to:

   (a) Obtain records and other information related to the "suit"; and

**(b)** Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section I – Coverage A – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments or settlements or the conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

## SECTION II – WHO IS AN INSURED

1. If you are designated in the Declarations as:

   a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

   b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

   c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

   d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

   e. A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

2. Each of the following is also an insured:

   a. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

   **(1)** "Bodily injury" or "personal and advertising injury":

       **(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

       **(b)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1)(a)** above;

       **(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs **(1)(a)** or **(b)** above; or

       **(d)** Arising out of his or her providing or failing to provide professional health care services.

   **(2)** "Property damage" to property:

       **(a)** Owned, occupied or used by,

       **(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

   you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

 © ISO Properties, Inc., 2006

b. Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

c. Any person or organization having proper temporary custody of your property if you die, but only:

(1) With respect to liability arising out of the maintenance or use of that property; and

(2) Until your legal representative has been appointed.

d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

b. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

c. Coverage B does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III – LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

a. Insureds;

b. Claims made or "suits" brought; or

c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

a. Medical expenses under Coverage C;

b. Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

c. Damages under Coverage B.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to Paragraph 2. above, the Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to Paragraph 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

a. Damages under Coverage A; and

b. Medical expenses under Coverage C

because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to Paragraph 5. above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage A for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to Paragraph 5. above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

1. **Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

(1) How, when and where the "occurrence" or offense took place;

(2) The names and addresses of any injured persons and witnesses; and

 © ISO Properties, Inc., 2006 CG 00 01 12 07   □

(3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.** If a claim is made or "suit" is brought against any insured, you must:

(1) Immediately record the specifics of the claim or "suit" and the date received; and

(2) Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b. Excess Insurance**

(1) This insurance is excess over:

(a) Any of the other insurance, whether primary, excess, contingent or on any other basis:

(i) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

(ii) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

(iii) That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

(iv) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section I – Coverage **A** – Bodily Injury And Property Damage Liability.

(b) Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured by attachment of an endorsement.

(2) When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

 © ISO Properties, Inc., 2006 □

**(3)** When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(a)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(b)** The total of all deductible and self-insured amounts under all that other insurance.

**(4)** We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

2. "Auto" means:

**a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

**b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

b. International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph **a.** above; or

c. All other parts of the world if the injury or damage arises out of:

(1) Goods or products made or sold by you in the territory described in Paragraph **a.** above;

(2) The activities of a person whose home is in the territory described in Paragraph **a.** above, but is away for a short time on your business; or

(3) "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph **a.** above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

b. You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

9. "Insured contract" means:

a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

b. A sidetrack agreement;

c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

e. An elevator maintenance agreement;

f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

(1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

(2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

(a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

(b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

(3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

   a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

   b. While it is in or on an aircraft, watercraft or "auto"; or

   c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

   but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

   a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

   b. Vehicles maintained for use solely on or next to premises you own or rent;

   c. Vehicles that travel on crawler treads;

   d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

      (1) Power cranes, shovels, loaders, diggers or drills; or

      (2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

   e. Vehicles not described in Paragraph a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

      (1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

      (2) Cherry pickers and similar devices used to raise or lower workers;

   f. Vehicles not described in Paragraph a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

   (1) Equipment designed primarily for:

      (a) Snow removal;

      (b) Road maintenance, but not construction or resurfacing; or

      (c) Street cleaning;

   (2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

   (3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

   a. False arrest, detention or imprisonment;

   b. Malicious prosecution;

   c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

   d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

   e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

   f. The use of another's advertising idea in your "advertisement"; or

   g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

   © ISO Properties, Inc., 2006   CG 00 01 12 07   □

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. "Products-completed operations hazard":

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(a) When all of the work called for in your contract has been completed.

(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

b. Does not include "bodily injury" or "property damage" arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

(2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

(3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

17. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

21. "Your product":

a. Means:

(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(a) You;

(b) Others trading under your name; or

(c) A person or organization whose business or assets you have acquired; and

(2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

b. Includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

        **(2)** The providing of or failure to provide warnings or instructions.

    **c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** "Your work":

    **a.** Means:

        **(1)** Work or operations performed by you or on your behalf; and

        **(2)** Materials, parts or equipment furnished in connection with such work or operations.

    **b.** Includes:

        **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

        **(2)** The providing of or failure to provide warnings or instructions.

© ISO Properties, Inc., 2006

CG 00 01 12 07    □

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# MINIMUM POLICY PREMIUM

This endorsement modifies and amends insurance provided under the following:

ALL COVERAGE PARTS

This endorsement sets forth the minimum earned premium for the policy. The minimum earned premium for this policy is calculated in accordance with the following:

1. The minimum premium for the policy period is 100% of the total policy premium as shown on the policy declarations page plus any premium adjustment by endorsements and any additional premium developed by audit.

2. Audits that indicate a return premium will not reduce the minimum as stated in paragraph 1.

3. If the insured cancels this policy and the policy is not subject to audit, the return premium will be 90% of the unearned policy premium; however in no event will the Company retain less than **25%** of the minimum premium shown in paragraph 1. above.

4. If the insured cancels this policy and the policy is subject to audit, the earned premium will be determined by final audit, however in no event will it be less than **25%** of the minimum premium as described in paragraph 1. above.

5. If the Company cancels the policy for any reason, other than for non-payment of premium, then the insured will be returned the full amount of the unearned premium without any minimum premium restrictions.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# POLICY LIMITATION – AMENDED AGGREGATE LIMITS OF INSURANCE PER LOCATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

SECTION III – LIMITS OF INSURANCE - The General Aggregate Limit applies separately to each "Location" of the Named Insured.

Notwithstanding the application of the General Aggregate Limit to each "Location" of the Named Insured, under no circumstances will we pay more than **$10,000,000** for all claims under this policy that are subject to the General Aggregate limit.

For the purpose of this endorsement, the following definition is added:

"Location" means premises involving the same or connecting lots, or premises whose connection is interrupted only by a street, roadway, waterway or right-of-way of a railroad. .

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

AP5011US 12-03                           Page 1 of 1

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# DEDUCTIBLE ENDORSEMENT –
# DAMAGES AND EXPENSES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

## SCHEDULE

| Coverage | Amount and Basis of Deductible | |
|---|---|---|
| | PER CLAIM   or   PER OCCURRENCE | |
| Bodily Injury Liability | $ | $ |
| OR | | |
| Property Damage Liability | $ | $ |
| OR | | |
| Personal & Advertising Injury Liability | $ | $ |
| OR | | |
| Damage To Premises Rented To You | $ | $ |
| OR | | |
| Assault & Battery | $ | $ 25,000 |
| OR | | |
| Medical Payments | $ | $ |
| OR | | |
| Bodily Injury Liability and/or Property Damage Liability and/or Personal & Advertising Injury Liability, and/or Damage To Premises Rented To You and/or Medical Payments Combined | $ | $ 5,000 |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**APPLICATION OF ENDORSEMENT** (Enter below any limitations on the application of this endorsement. If no limitation is entered, the deductibles apply to "claims expense" and damages for all "bodily injury", "property damage" or "personal and advertising injury" or medical expenses however caused):

A.   Our obligation under the Bodily Injury Liability, Property Damage Liability, Personal and/or Advertising Injury Liability, Damage to Premises Rented to You, Medical Payments or any other coverages provided by this policy to pay "claims expense" and damages on your behalf applies only to the amount of "claims expense" and damages in excess of any deductible amounts stated in the Schedule above as applicable to such coverages.

B. We may select a deductible amount on either a per claim or a per "occurrence" basis. Our selected deductible applies to the coverage option and to the basis of the deductible indicated by the placement of the deductible amount in the Schedule above. The deductible amount stated in the Schedule above applies as follows:

   **1. PER CLAIM BASIS.** If the deductible amount indicated in the Schedule above is on a per claim basis, that deductible applies as follows:

     a) Under Bodily Injury Liability Coverage, to all damages sustained by any one person because of "bodily injury" including "claims expense";

b) Under Property Damage Liability Coverage, to all damages sustained by any one person because of "property damage" including "claims expense";

c) Under Personal & Advertising Injury Liability Coverage, to all damages sustained by any one person or organization because of "personal and advertising injury" including "claims expense";

d) Under Damage To Premises Rented To You Coverage, all damages to any one premises while rented to you, because of "property damage" including "claims expense";

e) Under Medical Payments Coverage, to all medical expenses sustained by any one person including "claims expense"; or

f) Under Bodily Injury Liability and/or Property Damage Liability and/or Personal & Advertising Injury Liability, and/or Damage To Premises Rented To You, and/or Medical Payments Coverages Combined, to all injury, damage and medical expenses sustained by any one person or organization including "claims expense"

as the result of any one "occurrence", offense or accident.

If damages are claimed for care, loss of services or death resulting at any time from "bodily injury", a separate deductible amount will be applied to each person making a claim for such damages.

With respect to "property damage", "person" includes an organization.

**2. PER OCCURRENCE BASIS.** If the deductible amount indicated in the Schedule above is on a "per occurrence" basis, that deductible amount applies as follows:

a) Under Bodily Injury Liability Coverage, to all damages because of "bodily injury" including "claims expense";

b) Under Property Damage Liability Coverage, to all damages because of "property damage" including "claims expense";

c) Under Personal & Advertising Injury Liability Coverage, to all damages because of "personal and advertising injury" including "claims expense";

d) Under Damage To Premises Rented To You Coverage, all damages to any one premises while rented to you, because of "property damage" including "claims expense";

e) Under Medical Payments Coverage, to all medical expenses because of an accident including "claims expense"; or

f) Under Bodily Injury Liability and/or Property Damage Liability and/or Personal & Advertising Injury Liability, and/or Damage To Premises Rented To You, and/or Medical Payments Coverages Combined, to all injury, damage and medical expenses including "claims expense"

as the result of any one "occurrence", offense or accident, regardless of the number of persons or organizations who sustain damages because of that "occurrence", offense or accident.

C. The terms of this insurance, including those with respect to:

1. Our right and duty to defend any "suits" seeking those damages; and

2. Your duties in the event of an "occurrence", offense, claim, or "suit"

apply irrespective of the application of the deductible amount.

D. We may pay any part or all of the deductible amount to effect settlement of any claim or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

E. "Claims expense" shall include investigations, adjustment and legal expenses, interests and fees, including court costs and premiums on bonds incurred by us. "Claims expense" does not include salary charges of regular employees of the Company.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# PREMIUM BASE ENDORSEMENT

One or more of the following symbols may be entered under the Premium Base column of the Declarations. These symbols designate the base used for determining your premium. The following is a definition of these symbols when used as a premium base.

Symbol Definition

**"Area" means:** The total number of square feet of floor space at the insured premises, computed as follows:

For entire buildings, by multiplying the product of the horizontal dimensions of the outside of the outer building walls by the number of floors, including basements but do not use the area of the following:

1. Courts and mezzanine types of floor openings.

2. Portions of basements or floors where 50% or more of the area is used for shop or storage for building maintenance, dwelling by building maintenance employees, heating units, power plants or air-conditioning equipment.

3. For tenants, determine the area they occupy in the same manner as for the entire buildings.

The rates apply per 1,000 square feet of area.

**"Total Cost" means:**

The total cost of all work let or sublet in connection with each specific project including:

1. The cost of all labor, materials and equipment furnished, used or delivered for use in the execution of the work.
2. All fees, bonuses or commissions made, paid or due.

The rates apply per $1,000 of total cost.

**"Admissions" means:**

The total number of persons, other than employees or the named insured, admitted to the event insured or to events conducted on the premises whether on paid admissions, tickets, complimentary tickets or passes.

The rates apply per admission.

**"Payroll" means:**

1. Remuneration which includes money or substitutes for money.
2. Payroll includes:

    a. Commissions, bonuses, pay for holidays, vacations or periods of illness;
    b. Extra pay for overtime.
    c. Payments by an employer or amounts otherwise required by law to be paid by employees to statutory insurance or pension plans, such as Federal Social Security Act;

MC2126US 09-13                          Page 1 of 3

d.  Payment to employees on any basis other than time worked, such as piece work, profit sharing or incentive plans;

e.  Payment or allowance for hand tools or power tools used by hand provided by employees and used in their work or operations for the insured;

f.  The rental value of an apartment or a house provided for an employee based on comparable accommodations;

g.  Value of meals and lodging other than an apartment or house received by employees as part of their pay;

h.  The value of store certificates, merchandise, credits or any other substitute for money received by employees as part of their pay;

i.  The payroll of mobile equipment operators and their helpers, whether or not the operators are designated or licensed to operate automobiles. If the operators and their helpers are provided to the insured along with equipment hired under contract and their actual payroll is not known, use 1/3 of the total amount paid out by the insured for the hire of the equipment;

j.  The payroll of executive officers and individual insureds and co-partners;

k.  Fees paid to employment agencies for temporary personnel provided to the insured;

3.  Payroll does not include:

a.  Tips and other gratuities received by employees;

b.  Payments by an employer to group insurance or group pension plans for employees in accordance with the manuals in use by us;

c.  The value of special rewards for individual invention or discovery;

d.  Dismissal or severance payments except for time worked or accrued vacation;

The rates apply per $1,000 of payroll.

**"Gross Sales" or "Receipts" means:**

1.  The gross amount charged by the named insured, concessionaires of the named insured or by others trading under the insured's name for:
    a.  All goods or products, sold or distributed;
    b.  Operations performed during the policy period;
    c.  Rentals; and
    d.  Dues or fees.

2.  Inclusions
    The following items shall not be deducted from gross sales:
    a.  Foreign exchange discounts;
    b.  Freight allowance to customers;
    c.  Total sales of consigned goods and warehouse receipts;
    d.  Trade or cash discounts;
    e.  Bad debts; and
    f.  Repossession of items sold on installments (amount actually collected.)

3.  Exclusions
    The following items shall be deducted from gross sales:
    a.  Sales or excise taxes which are collected and submitted to a governmental division;
    b.  Credits for repossessed merchandise and products returned.
    c.  Allowances for damaged and spoiled goods;
    d.  Finance charges for items sold on installments;
    e.  Freight charges on sales if freight is charged as a separate item on customers invoice; and
    f.  Royalty income from patent rights or copyrights which are not product sales.

The rates apply per $1,000 of gross sales.

**"Each" means:**   The basis of premium involves units of exposure, and the quantity comprising each unit of exposure is indicated in the Declarations such as "per acre."

The rates apply per unit of exposure.

**"Unit" means:**   A single room or group of rooms intended for occupancy as separate living quarters by a family, by a group of unrelated persons living together, or by a person living alone.

The rates apply per each unit.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

COMMERCIAL GENERAL LIABILITY
CG 24 07 01 96

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PRODUCTS/COMPLETED OPERATIONS HAZARD REDEFINED

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

## SCHEDULE

**Description of Premises and Operations:**

| |
|---|
| Restaurant Operations |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

With respect to "bodily injury" or "property damage" arising out of "your products" manufactured, sold, handled or distributed:

1. On, from or in connection with the use of any premises described in the Schedule, or
2. In connection with the conduct of any operation described in the Schedule, when conducted by you or on your behalf,

Paragraph **a.** of the definition of "Products-completed operations hazard" in the DEFINITIONS Section is replaced by the following:

"Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" that arises out of "your products" if the "bodily injury" or "property damage" occurs after you have relinquished possession of those products.

Copyright, Insurance Services Office, Inc., 1994

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# HIRED AUTO LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE

## SCHEDULE

| Coverage | | Limit of Insurance | | Additional Premium |
|---|---|---|---|---|
| Hired Auto Liability | $ | 1,000,000 | $ | 250.00 |

The insurance provided under **SECTION I, - COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY,** applies to "bodily injury" or "property damage" arising out of the maintenance or use of a "hired auto" by you or your "employees" in the course of your business.  The Limit of Insurance shown in the Schedule above is the most we will pay for those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" arising out of the use of a "hired auto" by you or your "employees" in the course of your business.  The Limits of Insurance shown in the Schedule above are included within and are not in addition to the Limits of Insurance shown in the Declarations. Nothing in this endorsement shall increase the Limits of Insurance shown in the Declarations.

A.  Solely with respect to **HIRED AUTO LIABILITY:**

**SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions,** is amended by adding the following exclusions:

This insurance does not apply to:

"Bodily injury" or "property damage" arising out of any:

**(1)** Uninsured or Underinsured Motorist law; or
**(2)** No Fault Law or similar act or law.

"Property damage" to:

**(1)** Property owned or being transported by, or rented or loaned to the insured; or
**(2)** Property in the care, custody or control of the insured.

B.  Solely with respect to **HIRED AUTO LIABILITY:**

**SECTION II – WHO IS AN INSURED,** is replaced by the following:

Each of the following is an insured under this endorsement to the extent set forth below:

**a.** You;
**b.** Any other person using a "hired auto" with your permission; and
**c.** Any other person or organization, but only for their liability because of acts or omissions of an insured under **a.** or **b.** above.

None of the following is an insured:

**(1)** Any person engaged in the business of his or her employer for "bodily injury" to any co-"employee" of such person injured in the course of employment, or to the spouse, child, parent, brother or sister of that co-"employee" as a consequence of such "bodily injury", or for any obligation to share damages with or repay someone else who must pay damages because of the injury;

**(2)** Any partner or "executive officer" for any "auto" owned by such partner or officer or a member of his or her household;

**(3)** Any person while employed in or otherwise engaged in duties in connection with an "auto business", other than an "auto business" you operate;

AP2126US 01-08                          Page 1 of 2

    **(4)** The owner or lessee (of whom you are a sub lessee) of a "hired auto" or any agent or "employee" of any such owner or lessee;

    **(5)** Any person or organization for the conduct of any current or past partnership or joint venture that is not shown as a Named Insured in the Declarations.

**C.** Solely with respect to **HIRED AUTO LIABILITY**:

**SECTION V – DEFINITIONS** is amended by adding the following:

    **1.** "Auto Business" means the business or occupation of selling, repairing, servicing, storing or parking "autos".

    **2.** "Hired Auto" means any "auto" you lease, hire or borrow.  This does not include any "auto" you lease, hire or borrow from any of your "employees" or members of their households, or from any partner or "executive officer" of yours.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

AP2126US 01-08             Page 2 of 2

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NON-OWNED AUTO LIABILITY--INCLUDING LOADING AND UNLOADING

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE

## SCHEDULE

| Coverage | | Limits of Insurance | | Additional Premium |
|---|---|---|---|---|
| Non-Owned Auto Liability | $ | 1,000,000 | $ | 250.00 |

The insurance provided under **SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**, applies to "bodily injury" or "property damage" arising out of the use of a "non-owned auto" by any person other than you in the course of your business. Use includes operation, "loading or unloading" and the handling and placing of persons by an insured into, onto or from a "non-owned auto".

The Limit of Insurance shown in the Schedule above is the most we will pay for those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" arising out of the use of a "non-owned auto" by any person other than you in the course of your business. The Limits of Insurance shown in the Schedule above are included within and are not in addition to the Limits of Insurance shown in the Declarations. Nothing in this endorsement shall increase the Limits of Insurance shown in the Declarations.

A.   Solely with respect to **NON-OWNED AUTO LIABILITY:**

SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. **Exclusions,** is amended by adding the following exclusions:

This insurance does not apply to:

"Bodily injury" or "property damage" arising out of any:

**(1)** Uninsured or Underinsured Motorist law; or

**(2)** No Fault Law or similar act or law.

"Property damage" to:

**(1)** Property owned or being transported by, or rented or loaned to the insured; or

**(2)** Property in the care, custody or control of the insured.

B.   Solely with respect to **NON-OWNED AUTO LIABILITY:**

SECTION II – WHO IS AN INSURED, is replaced by the following:

Each of the following is an insured under this endorsement to the extent set forth below:

**a.**   You;

**b.**   For a "non-owned auto", any partner or "executive officer" of yours, but only while such "non-owned auto" is being used in your business; and

**c.**   Any other person or organization, but only for their liability because of acts or omissions of an insured under **a.** or **b.** above.

None of the following is an insured:

**(1)** Any person engaged in the business of his or her employer for "bodily injury" to any co-"employee" of such person injured in the course of employment, or to the spouse, child, parent, brother or sister of that co-"employee" as a consequence of such "bodily injury", or for any obligation to share damages with or repay someone else who must pay damages because of the injury;

(2) Any partner or "executive officer" for any "auto" owned by such partner or officer or a member of his or her household;

(3) Any person while employed in or otherwise engaged in duties in connection with an "auto business", other than an "auto business" you operate;

(4) The owner of a "non-owned auto" or any agent or "employee" of any such owner;

(5) Any person or organization for the conduct of any current or past partnership or joint venture that is not shown as a Named Insured in the Declarations.

C.   Solely with respect to **NON-OWNED AUTO LIABILITY**:

**SECTION V – DEFINITIONS** is amended by adding the following:

1.   "Auto Business" means the business or occupation of selling, repairing, servicing, storing or parking "autos".

2.   "Non-Owned Auto" means any "auto" you do not own, lease, hire or borrow which is used in connection with your business.  However, if you are a partnership, a "non-owned auto" does not include any "auto" owned by any partner.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL NAMED INSURED ENDORSEMENT

This endorsement modifies insurance provided under the following:

ALL COVERAGE PARTS

The persons or entities listed in the Schedule below are included as Named Insured(s) under this policy:

SCHEDULE

| Name: | Retroactive Date: If no date is shown below, the Retroactive date shown in the Declarations Page of this Policy shall apply: |
|---|---|
| Sunbrite Apartments LLC | |
| Metropole Hotel Apartments LLC | |
| Phillard Apartment Hotel LLC DBA Riviera Hotel | |
| Alan Lieberman | |
| South Beach Group Hotels, Inc. | |
| PCCO, Inc | |
| Hotel Revenue Management, Inc. | |
| Catalina Hotel LLC DBA Catalina Hotel & Beach Club | |
| Maxine Restaurant LLC | |
| Catalina Dorset LLC | |
| Kung Fu Sushi LLC DBA Kung Fu Kitchen & Sushi Restaurant | |
| Chesterfield Hotel and Suites LLC | |
| Hotel Chelsea South Beach LLC | |
| Hollywood All Suite LLC DBA Hollywood Beach Hotel & Hostel | |
| Taco Beach Shack LLC | |
| Hotel Shelley LLC | |
| Whitelaw South Beach Hotel LLC | |
| Rivera Lofts Hotel LLC | |
| 3720 Croydon LLC DBA Croydon Hotel | |
| Seaside Apartment Hotel LLC | |

This endorsement in no way increases the Limits of Insurance shown in the Declarations Page of this Policy.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

AP1005US 07-05                    Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – LESSORS OF LEASED EQUIPMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITYCOVERAGE

## SCHEDULE

Charles Garage LLC, Executive Offices
4333 Collins Avenue
Miami Beach, FL 33140

Who is an "Insured" is amended to include as an Insured any person or organization from whom you lease equipment when you and such person or organization have an agreement in writing that such person or organization be added as an Additional Insured to your policy.  The coverage afforded to the Additional Insured is solely limited to liability directly caused by the maintenance, operation or use by you of equipment leased to you by such person or organization.

Where no coverage shall apply herein for the Named Insured, no coverage or defense shall be afforded to the Additional Insured.

With respect to the coverage afforded to the Additional Insured, the following exclusions apply:

This coverage does not apply to:

1.  Any occurrence which takes place after the equipment lease expires;

2.  "Bodily injury" or "property damage" arising out of the sole negligence of the person or organization shown in the Schedule;

3.  "Bodily injury", "property damage" or "personal and advertising injury" arising out of the claimed negligence of the Additional Insured other than that directly caused by the maintenance, operation or use by you of equipment leased to you by the Additional Insured which shall be imputed to the Additional Insured; or

4.  "Bodily injury", "property damage" or "personal and advertising injury" to any employee of the Named Insured or to any obligation of the Additional Insured to indemnify another because of damage arising out of such injury.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED AS REQUIRED BY WRITTEN CONTRACT

This endorsement modifies insurance provided under the following:

ALL COVERAGE PARTS

**SECTION II – Who Is An Insured** is amended to include any person or organization you are required to include as an additional insured on this policy by written contract or written agreement in effect during this policy period and executed prior to the "occurrence" of the "bodily injury" or "property damage."

The insurance provided to the Additional Insured under this endorsement is limited as follows:

1. The person or organization is only an additional insured with respect to liability arising solely out of "your work" or "your product" which is imputed to the Additional Insured.

2. In the event that the Limits of Insurance provided by this policy exceed the Limits of Insurance required by the written contract or written agreement, the insurance provided by this endorsement shall be limited to the Limits of Insurance required by the written contract or written agreement. This endorsement shall not increase the Limits of Insurance stated in the Declarations.

3. This insurance does not apply to "bodily injury" or "property damage" arising out of "your work" or "your product" included in the "products – completed operations hazard" unless you are required to provide such coverage by written contract or written agreement but only for the period of time required by the written contract or written agreement and only for "bodily injury" or "property damage" that occurs during the policy period arising out of "your work" or "your product".

4. Any coverage provided by this endorsement to an Additional Insured shall be excess over any other valid and collectible insurance available to the Additional Insured whether primary, excess, contingent or on any other basis.

5. Where no coverage under this policy shall apply for the Named Insured, no coverage or defense shall be afforded to the Additional Insured.

6. This insurance does not apply to "bodily injury" or "property damage" arising out of the sole negligence of the Additional Insured.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED –
# MORTGAGEE, ASSIGNEE, OR RECEIVER

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

## SCHEDULE

**Name of Person or Organization:**

Bank United FSB, Its successors and/or assigns
255 Alhambra Circle
Coral Gables, FL 33134

Sovereign Bank/Fannie Mae, Their successors and/or assign Loan #7207010
195 Montague Street
Brooklyn, NY 11201

City National Bank of Miami ISAOA, ATIMA
PO Box 70385
Dallas, TX 75370

US Trust, Bank of America, Private Wealth Management
Ms. Rita C. Ramirez, CFP,
701 Brickell Avenue, 15th FL
Miami, FL 33131

Mercantil Commercebank, NA, its successors and/or assigns
12496 NW 25th Street
Miami, FL 33182

**Designation of Premises:**

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

1. WHO IS AN INSURED (Section II) is amended to include as an insured the person(s) or organization(s) shown in the Schedule but only with respect to their liability as mortgagee, assignee, or receiver and arising out of the ownership, maintenance, or use of the premises by you and shown in the Schedule.
2. This insurance does not apply to structural alterations, new construction and demolition operations performed by or for that person or organization.

CG 20 18 11 85          Copyright, Insurance Services Office, Inc., 1984          Page 1 of 1          ☐

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# PREMIUM AUDIT CONDITIONS AMENDED

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE
PRODUCTS/COMPLETED OPERATIONS COVERAGE

**SECTION IV--COMMERCIAL GENERAL LIABILITY CONDITIONS,** Item 5. Premium Audit, is deleted and replaced with the following:

**5. Premium Audit**

    **a.**   We will compute all premiums for this Coverage Part in accordance with our rules and rates.

    **b.**   Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill.

    **c.**   The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request. We have the right, but not the obligation, to conduct a physical audit of records needed for premium computation after the expiration of this policy.

    **d.**   Your refusal to maintain or provide needed records, or to allow us to conduct a physical audit of needed records, will result in our developing and calculating a final audit premium based on information available to us and without your cooperation. If final premium audits calculated without your cooperation result in additional premium, you are obligated to pay such additional premium.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# COMMON POLICY CONDITIONS

All Coverage Parts in this policy are subject to the following Conditions.

1. **CANCELLATION AND NON-RENEWAL**

   A. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

   B. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

      (1) 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

      (2) 30 days before the effective date of cancellation if we cancel for any other reason.

   C. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

   D. Notice of cancellation will state the effective date of cancellation. The policy will end on that date.

   E. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata unless cancellation is due to non payment of premium, in which case the refund may be less than pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

   F. If notice is mailed, proof of mailing will be sufficient proof of notice.

   If we elect not to renew this policy, we shall mail written notice to the First Named Insured at the address shown in the Declarations.  Such written notice of non-renewal shall be mailed at least 30 days prior to the end of the policy term.

2. **CHANGES**

   This policy contains all the agreements between you and us concerning the insurance afforded.  The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

3. **TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US**

   If the insured has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring suit or transfer those rights to us and help us enforce them.

4. **REPRESENTATIONS**

   By accepting this policy, you agree:

   A. The statements in the Declarations are accurate and complete;

   B. Those statements are based upon representations you made to us; and

   C. We have issued this policy in reliance upon your representations.

5. **SERVICE OF SUIT**

   It is agreed that in the event of the failure of this Company to pay any amount claimed to be due hereunder, this Company will submit to the jurisdiction of any court of competent jurisdiction within the United States of America and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court.

   It is further agreed that service of process in such suit may be made upon the Company's President, or his nominee, at the address shown on the Declarations page of this policy, and that in any suit instituted against any one of them upon this policy, this Company will abide by the final decision of

such Court or of any Appellate Court in the event of an appeal.

The above-named is authorized and directed to accept service of process on behalf of this Company in any such suit and/or upon the request of the insured to give a written undertaking to the insured that it or they will enter a general appearance upon this Company's behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States of America, which makes provision therefore, this Company hereby designates the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured or any beneficiary hereunder arising out of this contract of insurance, and hereby designates the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

6. **TERMS, CONDITIONS AND PREMIUM**

On each renewal, continuation, anniversary of the effective date of the policy or on an annual basis, the Company will determine the rate and premium and/or amend the terms and conditions in accordance with the rates and rules then in effect.

7. **TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

In Witness Whereof, this Company has executed and attested these presents; but this policy shall not be valid unless signed by duly authorized representatives of this Company.

*VICE PRESIDENT*                              *PRESIDENT*

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# BINDING ARBITRATION

This endorsement modifies insurance provided under the following:

ALL COVERAGE PARTS

Should we and the insured disagree as to the rights and obligations owed by us under this policy, including the effect of any applicable statutes or common law upon the contractual obligations otherwise owed, either party may make a written demand that the dispute be subjected to binding arbitration.

When such a request is made, The American Arbitration Association shall be used, with each party selecting an arbitrator from the list of qualified arbitrators for insurance coverage disputes provided by that Association.  The two chosen arbitrators shall select a third arbitrator from the same list; if they cannot agree to a selection, The American Arbitration Association shall make the selection for them.  Each party shall bear the costs of its arbitrator and shall share equally the costs of the third arbitrator and of the arbitration process.  A decision agreed to by two of the arbitrators will be binding.

In the event you prevail in the arbitration and we promptly offer to you arbitration costs and reasonable attorney fees incurred in connection therewith, in addition to the disputed contract benefit, you shall have no right to sue us for breach of implied covenants or unreasonable withholding of contract benefits.

To the extent that we prevail in the arbitration, the arbitrators may award us any expenses and/or damages incurred or paid under reservation of rights in excess of our contract obligations as determined by the arbitrators.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LIMITATION OF COVERAGE TO DESIGNATED PREMISES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL EXCESS LIABILITY COVERAGE PART

**SCHEDULE**

| **Premises:** |
| --- |
| All locations listed in the "All Premises You Own, Rent or Occupy" section of the MC0001US-0509 Commercial General Liability Declarations and any Locations added as an additional Location by endorsement to this Policy |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

This insurance applies only to "bodily injury", "property damage", or "personal and advertising injury" arising out of the ownership, maintenance or use of the premises shown in the above Schedule.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

AP2008US 07-12                                Page 1 of 1

COMMERCIAL GENERAL LIABILITY
CG 00 68 05 09

# RECORDING AND DISTRIBUTION OF MATERIAL OR INFORMATION IN VIOLATION OF LAW EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion **q.** of Paragraph **2. Exclusions** of Section **I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**q. Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

(1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

(2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

(3) The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

(4) Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

**B.** Exclusion **p.** of Paragraph **2. Exclusions** of Section **I – Coverage B – Personal And Advertising Injury Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**p. Recording And Distribution Of Material Or Information In Violation Of Law**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

(1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

(2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

(3) The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

(4) Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

COMMERCIAL GENERAL LIABILITY
CG 21 36 03 05

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – NEW ENTITIES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Paragraph **3.** of **Section II – Who Is An Insured** does not apply.

© ISO Properties, Inc., 2004

COMMERCIAL GENERAL LIABILITY
CG 21 47 12 07

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I – Coverage A – Bodily Injury And Property Damage Liability:**

This insurance does not apply to:

"Bodily injury" to:

**(1)** A person arising out of any:

    **(a)** Refusal to employ that person;

    **(b)** Termination of that person's employment; or

    **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a)**, **(b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of Section **I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to:

"Personal and advertising injury" to:

**(1)** A person arising out of any:

    **(a)** Refusal to employ that person;

    **(b)** Termination of that person's employment; or

    **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the injury-causing event described in Paragraphs **(a)**, **(b)** or **(c)** above occurs before employment, during employment or after employment of that person;

**(2)** Whether the insured may be liable as an employer or in any other capacity; and

**(3)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

COMMERCIAL GENERAL LIABILITY
CG 21 67 12 04

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2. Exclusions** of Section I – Coverage A – Bodily Injury And Property Damage Liability:

**2. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

**a.** "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

**b.** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

**B.** The following exclusion is added to Paragraph **2. Exclusions** of Section I – Coverage B – Personal And Advertising Injury Liability:

**2. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

**a.** "Personal and advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury.

**b.** Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

**C.** The following definition is added to the **Definitions** Section:

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

© ISO Properties, Inc., 2003                         □

IL 00 21 09 08

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:

   A. Under any Liability Coverage, to "bodily injury" or "property damage":

      (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

      (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

      (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

      (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

   "Hazardous properties" includes radioactive, toxic or explosive properties.

   "Nuclear material" means "source material", "special nuclear material" or "by-product material".

© ISO Properties, Inc., 2007

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

(a) Any "nuclear reactor";

(b) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel", or (3) handling, processing or packaging "waste";

(c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

 © ISO Properties, Inc., 2007 IL 00 21 09 08 □

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# COMBINED POLICY EXCLUSIONS

This endorsement modifies insurance provided under the following:

ALL COVERAGE PARTS

The following exclusions are added to this policy:

### ABSOLUTE ASBESTOS, LEAD OR SILICA EXCLUSION

Injury or damages, including any claim or suit, arising out of, resulting from, caused or contributed to by Asbestos, Lead or Silica is not covered under this policy, nor are any expenses nor any obligation to share damages with or repay anyone else who must pay damages from same in conjunction with occurrences arising or alleged to have arisen out of same, including but not limited to any:

    a.  "Bodily injury", "personal and advertising injury", "property damage" or damages of any type, arising out of the inhalation, ingestion, physical exposure to, absorption of, or toxic substances of or from Asbestos, Lead or Silica in any form, or from any goods, products or structures containing same, or "property damage" or devaluation of property arising from any form of same; or

    b.  Existence of Asbestos, Lead, or Silica, in any form, in occupancy or construction, or the manufacture, sale, transportation, handling, storage, disposal, or removal of same, or goods or products containing same; or

    c.  Loss, cost, expense, fines and/or penalties arising out of any (1) request, demand, order, governmental authority or directive or that of any private party or citizen action that any insured, or others, test for, monitor, clean up, remove, contain, treat, detoxify or neutralize or in any way respond to or assess the effects of Asbestos, Lead, or Silica, or (2) any litigation or administrative procedure in which any insured or others may be involved as a party in response to the effects or alleged effects of Asbestos, Lead, or Silica; or

    d.  Supervision, instructions, recommendations, requests, warnings or advice given or which should have been given, as well as any costs, including but not limited to abatement, mitigation, removal, containment, treatment, detoxification, neutralization, or disposal of same or in any way responding to or assessing the effects of same; or

    e.  Actual or alleged Asbestosis, Lead poisoning, Silicosis or any other similar condition.

This exclusion applies regardless of whether:

    a.  Injury or damage claimed is included within the "products/completed operations hazard" of the policy; or

    b.  An alleged cause for the injury or damage is the insured's negligent hiring, placement, training, supervision, retention, act, error or omission.

### CLAIM(S) IN PROGRESS EXCLUSION

    a.  This policy does not apply to "bodily injury", "personal and advertising injury" or "property damage" which begins or takes place before the inception date of coverage, whether such "bodily injury", "personal and advertising injury" or "property damage" is known to an insured, even though the nature and extent of such damage or injury may change and even though the damage may be continuous, progressive, cumulative, changing or evolving, and even though the "occurrence" causing such "bodily injury", "personal and advertising injury" or "property damage" may be or may involve a continuous or repeated exposure to substantially the same general harm.

    b.   All "property damage" to units of or within a single project or development, and arising from the same general type of harm, shall be deemed to occur at the time of damage to the first such unit, even though the existence, nature and extent of such damage or injury may change and even though the "occurrence" causing such "property damage" may be or involve a continuous or repeated exposure to substantially the same general harm which also continues or takes place (in the case of repeated exposure to substantially the same general harm) during the policy term.

## DISCRIMINATION EXCLUSION

Discrimination charges, of any kind, actual and alleged, are not covered under this policy, nor are any expenses or obligation to share damages with or repay another who must pay damages from same.

## DAMAGES LIMITATION

Damages mean a monetary judgment, award, or settlement.  Damages do not include:

    a.   Civil or criminal fines, sanctions or penalties, whether imposed pursuant to statute or otherwise; or

    b.   Judgments or awards arising from acts or omissions deemed uninsurable by law; or

    c.   The restitution of consideration or expense paid to you for professional services rendered or which should have been rendered; or

    d.   Disputed fees or any actual or alleged personal profit or advantage to which you are not legally entitled; or

    e.   Equitable or non-pecuniary relief.

## DUTY TO DEFEND EXCLUSION

Where there is no coverage under this policy, there is no duty to defend.

## PROFESSIONAL LIABILITY EXCLUSION

Professional liability, malpractice, errors, omissions, or acts of any type including rendering or failure to render any type of professional service is not covered under this policy nor are any expenses nor any obligation to share damages with or repay anyone else who must pay damages from same, unless such coverage is specifically endorsed onto this policy.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION – CROSS SUITS

This endorsement modifies insurance provided under the following:

ALL COVERAGE PARTS

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" or any other claim for damages brought by any insured covered by this policy, against any other insured that has an ownership interest in, is operated, controlled, or managed by or is a parent, subsidiary or affiliate of any such insured.

This exclusion does not apply to any additional insured added to this policy by endorsement if such additional insured is:

1.  specifically named in the Schedule of such endorsement, or

2.  an indemnitee in a written contract or written agreement between any Named Insured and any additional insured signed before the date of the first "occurrence" or first offense and requiring the Named Insured to add such indemnitee as an additional insured;

Provided such additional insured:

a.  is not a parent, subsidiary or affiliate of the Named insured;

b.  does not have any ownership interest in the Named insured;

c.  is not owned, operated, controlled or managed by the Named insured.


ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION—DIVING BOARDS, WATER SLIDES AND SIMILAR APPARATUS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of, or directly or indirectly related in any way to the use, maintenance, condition or presence of any diving boards, diving platforms, water slides, or similar apparatus in connection with premises you own, manage, rent or otherwise occupy.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# ABSOLUTE POLLUTION AND POLLUTION RELATED LIABILITY EXCLUSION—WITH HOSTILE FIRE/HVAC EXCEPTIONS

This endorsement modifies insurance provided under the following:

ALL COVERAGE PARTS

The following exclusion is added to this policy.  If the policy already includes a pollution exclusion or a pollution-related exclusion, such exclusion(s) is(are) deleted and replaced with the following:

Pollution/environmental impairment/contamination is not covered under this policy, nor are any expenses nor any obligation to share damages with or repay anyone else who must pay damages from same in conjunction with occurrences arising out of or alleged to have arisen out of same. All liability and expense arising out of or related to any form of pollution, whether intentional or otherwise and whether or not any resulting injury, damage, devaluation, cost or expense is expected by any insured or any other person or entity is excluded throughout this policy.

This insurance does not apply to any damages, claim, or suit arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" including but not limited to any:

a. "Bodily injury", "personal and advertising injury", "property damage", or damages for the devaluation of property, or for taking, use or acquisition or interference with the rights of others in or on property or air space, or any other type injury or expense; or

b. Any loss, cost, expense, fines and/or penalties arising out of any (1) request, demand, order, governmental authority or directive or that of any private party or citizen action that any insured, or others, test for, monitor, clean up, remove, contain, treat, detoxify or neutralize or in any way respond to, or assess same, the effects of "pollutants", environmental impairments, contaminants or (2) any litigation or administrative procedure in which any insured or others may be involved as a party as a result of actual, alleged or threatened discharge, dispersal, seepage, migration, release, escape or placement of "pollutants", environmental impairments, or contaminants into or upon land, premises, buildings, the atmosphere, any water course, body of water, aquifer or ground water, whether sudden, accidental or gradual in nature or not, and regardless of when.

This exclusion applies regardless of whether:

a. Injury or damage claimed is included within the "products-completed operations hazard" of the policy; or

b. An alleged cause for the injury or damage is the insured's negligent hiring, placement, training, supervision, retention, act, error or omission.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This exclusion does not apply to:

a. "bodily injury", if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests; or

b. "bodily injury", "personal and advertising injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire" unless that "hostile fire" originated:

   i. At any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste; or

   ii. At any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize or in any way respond to, or assess the effects of "pollutants".

The following definition is added to the policy.  If the policy already includes a definition of "pollutants" such definition is deleted and replaced with the following:

"Pollutants" mean any solid, liquid, gaseous, fuel, lubricant, thermal, acoustic, electrical, or magnetic irritant or contaminant, including but not limited to smoke, vapor, soot, fumes, fibers, radiation, acid, alkalis, petroleums, chemicals or "waste". "Waste" includes medical waste, biological infectants, and all other materials to be disposed of, recycled, stored, reconditioned or reclaimed.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION - LIQUOR LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE

**SECTION I – COVERAGES**

**COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**2. Exclusions c. Liquor Liability** is deleted and replaced with the following:

The coverage under this policy does not apply to "bodily injury", "property damage", or "personal and advertising injury" arising out of:

1.  Causing or contributing to the intoxication of any person;

2.  The furnishing of alcoholic beverages to anyone under the legal drinking age or the influence of alcohol;

3.  Any statute, ordinance or regulation relating to sales, gift, distribution or use of alcoholic beverages;

4.  Any act or omission by any insured, any "employee" of any insured, patrons, members, associates, volunteers or any other person providing or failing to provide transportation, detaining or failing to detain any person, or any act of assuming or not assuming responsibility for the well being, supervision or care of any person allegedly under or suspected to be under the influence of alcohol; or

5.  The negligent hiring, employment, training, placement or supervision of any person doing work for or otherwise acting on behalf of any Insured.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# FIDUCIARY EXCLUSION

This endorsement modifies insurance provided under the following:

ALL COVERAGE PARTS

This policy does not apply to any claim arising out of the:

1.  Coercion, conversion or misappropriation of others' funds or property;
2.  Any dishonest, fraudulent, criminal, malicious acts or omissions of the insured, partner or employee or any person for whom you are legally responsible; or
3.  Any activities or operations performed in the capacity of a fiduciary.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION – COVERAGE C – MEDICAL PAYMENTS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| ALL PREMISES AND CLASSIFICATIONS |
| --- |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

With respect to any premises or classification shown in the Schedule:

1. Section **I** – Coverage **C** – Medical Payments does not apply and none of the references to it in the Coverage Part apply.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLLY.

# FLORIDA CHANGES—CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

ALL COVERAGE PARTS

The CANCELLATION AND NON-RENEWAL Condition of this Policy is deleted and replaced with the following:

**CANCELLATION AND NON-RENEWAL**

    A.  The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

    B.  If the policy has been in effect for 90 days or less, we may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation, accompanied by the reason therefore, at least:

        (1)  10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

        (2)  20 days before the effective date of cancellation if we cancel for any other reason, except we may cancel immediately if there has been:

            (a)  A material misstatement or misrepresentation; or

            (b)  A failure to comply with our underwriting requirements.

    C.  If the policy has been in effect for more than 90 days, we may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation, accompanied by the reason therefore, at least:

        (1)  10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

        (2)  45 days before the effective date of cancellation if we cancel for any other reason.

    D.  We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

    E.  Notice of cancellation will state the effective date of cancellation.  The policy will end on that date.

    F.  If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata.  If the first Named Insured cancels, the refund may be less than pro rata.  The cancellation will be effective even of we have not made or offered a refund.

    G.  If notice is mailed, proof of mailing will be sufficient proof of notice.

        If we elect not to renew this Policy for an additional "policy period", we shall mail written notice, stating the reason for non-renewal, to the first Named Insured at the address shown in the Declarations.  Such written notice of non-renewal shall be mailed at least 45 days prior to the end of the policy period.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.**

THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE
DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS ENDORSEMENT DOES
NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER
THE POLICY.

# REJECTION OF COVERAGE
# FOR CERTIFIED ACTS OF TERRORISM COVERAGE
# (PURSUANT TO TERRORISM RISK INSURANCE ACT)

SCHEDULE

## THE INSURED WAS OFFERED AND

## HAS DECLINED TERRORISM COVERAGE ON THIS POLICY

In accordance with the federal Terrorism Risk Insurance Act, this notice confirms that you were offered and
have rejected coverage for terrorist acts certified under that Act.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION OF CERTIFIED ACTS OF TERRORISM AND EXCLUSION OF OTHER ACTS OF TERRORISM COMMITTED OUTSIDE THE UNITED STATES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** The following exclusion is added:

This insurance does not apply to:

**TERRORISM**

"Any injury or damage" arising, directly or indirectly, out of a "certified act of terrorism", or out of an "other act of terrorism" that is committed outside of the United States (including its territories and possessions and Puerto Rico), but within the "coverage territory". However, with respect to an "other act of terrorism", this exclusion applies only when one or more of the following are attributed to such act:

**1.** The total of insured damage to all types of property exceeds $25 million (valued in US dollars). In determining whether the $25 million threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the terrorism and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

**2.** Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

   **a.** Physical injury that involves a substantial risk of death; or

   **b.** Protracted and obvious physical disfigurement; or

   **c.** Protracted loss of or impairment of the function of a bodily member or organ; or

**3.** The terrorism involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

**4.** The terrorism is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

**5.** Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials.

With respect to this exclusion, Paragraphs **1.** and **2.** describe the thresholds used to measure the magnitude of an incident of an "other act of terrorism" and the circumstances in which the threshold will apply for the purpose of determining whether this exclusion will apply to that incident.

**B.** The following definitions are added:

**1.** For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under any Coverage Part to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part.

© Insurance Services Office, Inc., 2015

2. "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

   a. The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act;

   b. The act resulted in damage:

      (1) Within the United States (including its territories and possessions and Puerto Rico); or

      (2) Outside of the United States in the case of:

         (a) An air carrier (as defined in Section 40102 of title 49, United States Code) or United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States), regardless of where the loss occurs; or

         (b) The premises of any United States mission; and

   c. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

3. "Other act of terrorism" means a violent act or an act that is dangerous to human life, property or infrastructure that is committed by an individual or individuals and that appears to be part of an effort to coerce a civilian population or to influence the policy or affect the conduct of any government by coercion, and the act is not a "certified act of terrorism".

   Multiple incidents of an "other act of terrorism" which occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.

C. The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Coverage Part.

# JAMES RIVER INSURANCE COMPANY
## Privacy Policy

**We do not sell customer information to nonaffiliated third parties, and we do not share customer information with nonaffiliated third parties except those parties who perform contractual services for us, and parties to which we are authorized to provide information by law.** In addition, when we provide information to affiliates or non-affiliates, we limit those disclosures to information about your transactions and experiences with us and to disclosures otherwise permitted by law. You do not need to take any action to prevent us from selling or sharing information we obtain about you.

**We use security measures and training in our effort to protect the customer information we collect.** We protect the information we obtain about you by maintaining physical, electronic and procedural safeguards.

**We collect the following types of information about you when you purchase or use our products and services.** Most of the information that we obtain about you comes directly from you, such as through the insurance applications you submit when requesting insurance products. These applications and other inquiries we make of you allow us to learn information that we may use to contact you in the future, such as your name, address, telephone number and e-mail address. In addition, insurance applications and other information you provide enables us to determine the type and value of your insured property, the types of insurance coverages you have or in which you might be interested, and similar information.

If you visit an Internet site that we maintain, we might request or obtain information that will enable us to identify you as a registered user, such as your name, a user identification name, a password, password reminders, and your Internet service provider. We might use a "cookie" to retain some of this information. We also might obtain information about your operating system, web browser and similar information to enable us to improve the operation of our site.

When we consider products and services in which you may be interested, we often review information that we have about your past transactions with us or our affiliates, such as your existing or former policy coverages, premiums and payment history. In addition, we may learn information about your transactions with nonaffiliated third parties, including the types of products or services you obtained from them and your experiences with them. Finally, we may obtain other information from third parties that has a bearing upon your eligibility for the products or services you seek from us. This information may include your credit report or information about your creditworthiness, or other information maintained by consumer reporting agencies.

**We provide customer information only to our affiliates and to nonaffiliates that must protect your customer information.**

**We also may provide information as mentioned in this notice to nonaffiliated third parties that perform services for us or perform functions on our behalf, such as marketing and research, or to other financial institutions with which we have joint agreements for activities such as marketing. By law, our contracts with these parties must prevent them from using the information they receive about you except as described in this notice.**

Finally, we may share customer information as permitted by applicable law. This means that we will share information with parties as necessary to affect, administer, or enforce transactions that you request. For example, we might provide information to a company that processes, prints and mails our insurance policies to you, or to a company that adjusts claims under your policies. We also might disclose customer information to other entities specified by law, such as insurance advisory organizations, our attorneys and accountants, consumer reporting agencies, or civil or regulatory authorities. Federal law sets the limitations on these types of disclosures.

**We strive to keep our records as accurate as possible.** We attempt to maintain accurate records about you and we will gladly make appropriate corrections when you notify us. Of course, we do not control the accuracy of information gathered and provided by third parties, and you may need to notify third parties directly if you believe that any information we received from them is inaccurate. You may request the name and address of any consumer-reporting agency from which we obtain a report on you. You then may contact that consumer-reporting agency to request a copy of the report it makes or to advise of any changes to the information they maintain and report.

We will provide one copy of this Privacy Policy to joint contract holders. Please share this information with everyone covered under your policy or contract.

AP0100US 04-03

Filing # 41214207 E-Filed 05/09/2016 08:48:22 AM

IN THE CIRCUIT COURT OF THE 11TH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA

CASE NO.: 2016-008712-CA-01

TERRANCE WEST,

     Plaintiff,

v.

SOUTH BEACH GROUP HOTELS INC.,
and CARLOS FERNANDO VICTORIA,

     Defendants.

_____/

### FIRST AMENDED COMPLAINT

Plaintiff, TERRANCE WEST ("Mr. West"), by and through undersigned counsel, hereby files this First Amended Complaint against Defendants, SOUTH BEACH GROUP HOTELS INC. ("SBGH") and CARLOS FERNANDO VICTORIA ("Mr. Victoria") (collectively "Defendants"), and in support states as follows:

### OVERVIEW

1.   This is a lawsuit brought by Mr. West to recover damages sustained due to the negligence of employees of SBGH, which resulted in Mr. West being put in a position where harm was threatened and items were stolen, and caused Mr. West to suffer emotional distress. At no point in time relevant to the facts herein did Mr. West in any way contribute to his loss through any action or non-action. The items stolen were a byproduct of the foreseeable events that occurred, which were only possible of occurring due to the negligent acts of an employee of SBGH within the scope of the employee's employment, and for which SBGH should be held vicariously accountable for under Florida law. Mr.

**EXHIBIT "B"**

West made multiple overtures to SBGH and its executives as part of a good faith effort to resolve the damages incurred by Mr. West. Such efforts have gone completely ignored to date.

## JURISDICTION AND VENUE

2. This Court has jurisdiction because the amount in controversy is in excess of Fifteen Thousand Dollars ($15,000), exclusive of costs and interest.

3. This Court has personal jurisdiction over the Defendants, because SBGH owns, manages, and engages in business in the State of Florida pursuant to § 48.193(1)(a), Fla. Stat. and because Mr. Victoria committed the tortious act of negligence within the State of Florida.

4. Venue is proper with this court because the acts giving rise to this action occurred in Miami-Dade County, Florida.

## THE PARTIES

5. Plaintiff, Mr. West, is an individual who resides in Ellicott City, Maryland. Mr. West was a guest of the Metropole South Beach Hotel, a hotel owned by SBGH, when the acts described herein occurred.

6. Defendant, SBGH, is the corporate owner of the Metropole South Beach. Metropole South Beach is located at 635 Collins Ave. Miami Beach, FL 33139.

7. Defendant, Mr. Victoria, is an employee of SBGH and works at Metropole South Beach located at 635 Collins Ave. Miami Beach, FL 33139. Mr. Victoria is the employee who committed the tortious acts which led to the theft of Mr. West's property.

## FACTS

7. On February 26, 2016, Mr. West, along with a friend, checked into the Metropole South Beach hotel for vacation.

8. On February 27, 2016, Mr. West was approached by two ladies, that he had never seen nor met before, during his stay at the Metropole South Beach.

9. Mr. West, his friend, and the two ladies engaged in conversation, but after a short amount of time they all parted ways without any plans to meet at a later time or date. Neither Mr. West nor his friend provided either of the two ladies with access to their room at the Metropole South Beach. They did not provide either of the ladies with a room key nor advise any individual at the Metropole South Beach that either of the ladies were to be provided access to the room.

10. After the two groups parted ways, the two ladies approached Mr. Victoria at the front desk of the Metropole South Beach and requested entrance to Mr. West's hotel suite.

11. The two ladies were not with Mr. West when they asked for entrance to Mr. West's hotel suite, Mr. West never authorized the two ladies access to the suite, and Mr. Victoria never asked nor received authorization from Mr. West or his friend to provide the two ladies access to the suite.

12. Mr. Victoria, acting within the scope of his employment, but without any consent from the actual tenants (Mr. West or his friend), made a room key for the ladies.

13. Mr. Victoria then instructed a hotel employee acting in the capacity of bellman (Mr. Bermudez) to escort the ladies to Mr. West's suite.

14. Mr. Bermudez escorted the ladies to Mr. West's room per Mr. Victoria's instructions.

15. One of the two ladies stayed outside of Mr. West's suite while Mr. Bermudez escorted them all the way up to the front door of the suite.

16. The other lady went into the suite and Mr. Bermudez actually observed her looking around the hotel suite.

17. The two ladies subsequently stole two Rolex watches from Mr. West's hotel suite, while under Mr. Bermudez's watch and only because Mr. Victoria provided the ladies with access to the suite.

18. Mr. West's watch was located inside of his luggage and his friend's watch was located on the night stand. This was not an act whereby the hotel would be able to disclaim responsibility based on an act by Mr. West or his friend. Here, SBGH, through its employees (namely Mr. Victoria), perpetrated the theft through the acts of negligence. But for said negligent acts, Mr. West and his friend would not have been put in a position where the theft could have occurred.

19. Upon returning to his room and discovering the theft of the two Rolex watches, Mr. West promptly contacted the front desk of the Metropole South Beach, as well as the Miami Beach Police Department.

20. Recorded videos taken from cameras located throughout the Metropole South Beach confirm that the two ladies were wrongfully granted access to Mr. West's suite and stole the Rolex watches.

21. At approximately 9 p.m. Eastern on February 27, 2016, a police report was filed with regard to the theft of the two Rolex watches.

22. Moreover, even after the theft, Metropole South Beach failed to provide the adequate level of due care and safety necessary for Mr. West and all patrons of the hotel.

23. Nearly an hour after the first police report was filed, Mr. West heard a knock on the door of his suite.

24. Mr. West thought the knock on the door was the police following up with the ongoing, existing investigation related to the police report Mr. West previously filed.

25. Mr. West opened the door and an unidentified man forced his way into the room and threatened Mr. West's life and that of his friend.

26. Mr. West was under the belief that this man was armed with a firearm, because he saw a bulge on the assailant's hip, under his shirt.

27. Furthermore, the man demanded all of the cash on Mr. West and his friend ($5000.00 USD in total), Christian Louboutin shoes, and other items stored in the suite.

28. The man threatened Mr. West by telling him, "If you don't give me what I want, I have people in the car that will burn this whole place down."

29. Fearing for his safety, Mr. West complied with the demands of the assailant.

30. Videotapes located outside of the suite (Room 102) show a man entering the suite and leaving five (5) or six (6) minutes later carrying a white bag.

31. After this incident, Mr. West once again notified the hotel as well as the Miami Beach Police Department.

32. On March 1, 2016, the undersigned reached out to the General Manager of Metropole South Beach (Ms. Jenny Baluja) in order to resolve this dispute without litigation.

33. On March 2, 2016, the undersigned again contacted the General Manager of Metropole South Beach and was told she was in a meeting, but would respond as soon as possible.

34. Later that same day, the undersigned again attempted to contact Ms. Baluja, but was again told that she was in a meeting.

35. The undersigned has since made various efforts to communicate with other high ranking employees of the Metropole South Beach and SBGH in an effort to determine whether a resolution could be provided without the need for litigation. Not a single communication sent by the undersigned has been responded to at this time.

36. Mr. West has been in contact with the Miami Beach police since the date of the incident.

## COUNT I-NEGLIGENCE AS AGAINST MR. VICTORIA

37. Plaintiff, Mr. West, re-adopts and re-alleges the allegations contained in paragraphs 1 through 36 as fully stated herein and further alleges the following:

38. As an employee, and particularly as the front desk manager of the hotel, Mr. Victoria had and has the duty of ensuring that Mr. West's person and property are safe while on the premises of the hotel.

39. Mr. Victoria has a duty to, at all times, provide safe premises and exercise reasonable care for the safety of their guests.

40. Mr. Victoria had a duty to exercise reasonable and ordinary care with respect to guests, patrons, business invitees and persons like Mr. West.

41. On February 27, 2016, Mr. Victoria breached the duty of care owed to Mr. West when he allowed two unauthorized ladies to gain access to Mr. West's suite without Mr. West's consent and without seeking same from Mr. West.

42. These ladies subsequently stole two Rolex watches from Mr. West's suite as a result of Mr. Victoria's negligent act, which was assisted by way of Mr. Bermudez accompanying the ladies to the suite and standing by while one lady rummaged around the suite and stole the Rolex watches.

43. On February 27, 2016, Mr. Victoria further breached the duty of care owed to Mr. West when he did not adequately supervise and secure the premises of the hotel, allowing a potentially armed man who was not a guest of the hotel to enter the hotel and threaten Mr. West's life unless he forfeited property owned and belonging to Mr. West.

44. This negligent act led to a potentially armed man forcing his way into Mr. West's room, threatening Mr. West's life, and then subsequently taking all of Mr. West's cash and other personal items.

45. Mr. Victoria had an affirmative duty to inspect and seek out hazards that may not be readily apparent, seen or appreciated by patrons and guests.

46. As a direct and proximate result of the above-said conduct of Mr. Victoria, Mr. West has suffered and continues to suffer from, including but not limited to, the loss of the value of the items that were wrongfully stolen from his suite.

47. All damages sustained by Mr. West was the actual and proximate cause of Mr. Victoria's actions and not due to any actions or inactions from Mr. West.

**WHEREFORE**, for the reasons set forth herein, Plaintiff requests this Honorable Court to award Plaintiff Fifty-Three Thousand One Hundred Twenty Nine Dollars ($53,129.00) in order for the Plaintiff to be made whole for the theft of all monies and items during his stay at the Metropole South Beach. Furthermore, Plaintiff asks for all costs, interest, and attorneys' fees as allowed by law, and all other relief as the Court deems just and equitable.

## COUNT II-NEGLIGENCE AS AGAINST SBGH

48. Plaintiff, Mr. West, re-adopts and re-alleges the allegations contained in paragraphs 1 through 36 as fully stated herein and further alleges the following:

49. At all times relevant to the allegations contained herein, Mr. Victoria was employed by, and was an agent, servant and/or employee of SBGH.

50. Mr. Victoria's wrongful acts, as described in Count I, were committed within the scope of his employment with SBGH, in that they were committed while on duty and in furtherance of SBGH's business.

51. The creation of a new hotel key and Mr. Victoria's instructions to Mr. Bermudez, to escort the ladies to Mr. West's suite, as well as Mr. Victoria's non-action in allowing an individual who was not a guest to approach Mr. West's suite and threaten his life while demanding Mr. West's property, were all within the scope of VICTORIA's employment.

52. Furthermore, other employees on duty who failed to provide reasonable and ordinary care to Mr. West by allowing the non-guest entry to Mr. West's room contributed to the negligent act of which SBGH must be liable to Mr. West.

53. SBGH had an affirmative duty to inspect and seek out hazards that may not be readily apparent, seen or appreciated by patrons and guests.

54. SBGH has a duty to exercise reasonable and ordinary care and caution in and about the ownership, management, maintenance, supervision, control and operation of the hotel and its providing access to rooms through the creation of keys as well as with regard to allowing only guests to approach suites, and each of its employees, agents, servants and independent contractors, all to the benefit of guests, patrons, business invitees and persons like Mr. West.

55. As a direct and proximate result of the above-said conduct of SBGH, Mr. West has suffered and continues to suffer from, including but not limited to, the loss of the value of the items that were wrongfully stolen from his suite.

56. As an employer, SBGH is responsible for all negligent acts committed by its employees, including Mr. Victoria, within the scope of their employment.

**WHEREFORE,** for the reasons set forth herein, Plaintiff requests this Honorable Court to award Plaintiff Fifty-Three Thousand One Hundred Twenty Nine Dollars ($53,129.00) in order for the Plaintiff to be made whole for the theft of all monies and items during his stay at the

Metropole South Beach. Furthermore, Plaintiff asks for all costs, interest, and attorneys' fees as allowed by law, and all other relief as the Court deems just and equitable.

## COUNT III-NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS AS AGAINST ALL DEFENDANTS

57. Plaintiff, Mr. West, re-adopts and re-alleges the allegations contained in paragraphs 1 through 36 as fully stated herein and further alleges the following:

58. Mr. West suffered a physical injury by way of the armed man forcing his way into Mr. West's room, threatening Mr. West's life, and then subsequently taking all of Mr. West's cash and other personal items. Florida courts have deemed such acts to satisfy the impact rule, when based on the hotel's alleged negligence in failing to provide adequate security, which is alleged above.

59. The armed man's body, along with what Mr. West believed to be a gun, made physical contact with Mr. West's body and the armed man made physical contact with Mr. West when he touched Mr. West's body in an apparent search for money or other items.

60. Mr. West's physical injury was caused by the psychological trauma that resulted from the occurrence of being robbed and threatened by an armed man who only had access to Mr. West on the hotel's property due to the Defendants' negligence.

61. Mr. West has suffered from extreme emotional distress since and stemming from the incident during which the impact occurred. The extreme emotional distress was suffered by Mr. West within a short time of the incident and continues through this date.

**WHEREFORE,** for the reasons set forth herein, Plaintiff requests this Honorable Court to award damages in an amount greater than $15,000.00 for the emotional damages sustained, in order for the Plaintiff to be made whole for the extreme emotional harm Plaintiff endures.

Furthermore, Plaintiff asks for all costs, interest, and attorneys' fees as allowed by law, and all

other relief as the Court deems just and equitable.

## JURY TRIAL DEMAND

The Plaintiff demands a trial by jury on all issues.


May 9, 2016                                    Respectfully submitted.

                                               **HEITNER LEGAL, P.L.L.C**
                                               *Attorney for Plaintiff*
                                               1736 NE 7th Street
                                               Fort Lauderdale, FL 33304
                                               Phone: 954-558-6999
                                               Fax: 954-927-3333



                                   By:

                                               DARREN A. HEITNER
                                               Florida Bar No.: 85956
                                               Darren@heitnerlegal.com

<u>**CERTIFICATE OF SERVICE**</u>

**I HEREBY CERTIFY** that on May 9, 2016, the foregoing was served upon parties via e-mail to Joshua M. Entin, Esq., whom has confirmed that he is accepting service on behalf of both Defendants, at the email address: josh@entinlaw.com.

**HEITNER LEGAL, P.L.L.C**
*Attorney for Plaintiff*
1736 NE 7th Street,
Fort Lauderdale, FL 33304
Phone: 954-558-6999
Fax: 954-927-3333

By:
DARREN A. HEITNER
Florida Bar No.: 85956
Darren@heitnerlegal.com

**Joshua M. Entin, Esq.**

| | |
|---|---|
| **From:** | Dalton, Megan <Megan.Dalton@jamesriverins.com> |
| **Sent:** | Wednesday, May 11, 2016 9:42 AM |
| **To:** | Joshua M. Entin, Esq. |
| **Subject:** | RE: MUSEUM WALK APTS ET AL; CGL POL#00060233-2; D/O/L: 2/27/16; CLAIM# 00045781 |
| **Attachments:** | JRIC claim # 45781: Museum Walk Apartments LLC, Chesterfield Hotel LLC ETAL - Pol# 00060233-2 |

Good morning,

I apologize for the delay- yesterday was my first day back in the office so I was busy playing catch up all day.   It appears my co-worker, Greg Hawbaker, sent you a copy via email yesterday morning (see attached).

Please feel free to let me know should you need anything further.

Thank you

Meggie Dalton, MHRM
Claims Examiner
James River Insurance Company
6641 West Broad Street, Ste 300
Richmond, VA  23230
Telephone: (804) 281-3377
Fax: (804) 420-1058
megan.dalton@jamesriverins.com

Mailing address:
P.O. Box 27648
Richmond, VA 23261-7648

If you need to report a new claim please email New.Notices@JamesRiverIns.com or via fax at 804-420-1058.  If you need to request a Loss Run please email your request to LossRuns@JamesRiverIns.com.  For information on all James River products, visit our website at www.jamesriverins.com.

**From:** Joshua M. Entin, Esq. [mailto:josh@entinlaw.com]
**Sent:** Tuesday, May 10, 2016 11:29 AM
**To:** Dalton, Megan
**Cc:** Gina Lopez; Osterman, Colten; Laura Cano; Allison B. Duffie, Esq.; Chris Rollins
**Subject:** FW: MUSEUM WALK APTS ET AL; CGL POL#00060233-2; D/O/L: 2/27/16; CLAIM#00045781

Dear Megan:

Per Colten's email indicating he is out of the office, please see the below and attached.

Regards,

Josh


EXHIBIT "C"

Joshua M. Entin, Esq.
Entin & Della Fera, P.A.
633 S. Andrews Avenue
Suite 500
Ft. Lauderdale, FL 33301
(P) 954-761-7201
(F) 954-764-2443
www.entinlaw.com

**NOTICE:** *This e-mail message and all attachments transmitted with it may contain legally privileged and confidential information intended solely for the use of the addressee. If the reader of this message is not the intended recipient, you are hereby notified that any reading, dissemination, distribution, copying, or other use of this message or its attachments is strictly prohibited. If you have received this message in error, please notify the sender immediately by telephone (954-761-7201) or by electronic mail (josh@entinlaw.com), and delete this message and all copies and backups thereof. Thank you.*

**From:** joshua entin <josh@entinlaw.com>
**Date:** Tuesday, May 10, 2016 at 11:23 AM
**To:** Gina Lopez <gina@combinedmiami.com>, "colten.osterman@jamesriverins.com" <colten.osterman@jamesriverins.com>
**Cc:** Chris Rollins <chris.rollins@southbeachgroup.com>, "ginalina226@att.net" <ginalina226@att.net>, Laura Cano <laurac@entinlaw.com>, "Allison B. Duffie, Esq." <allison@entinlaw.com>
**Subject:** Re: MUSEUM WALK APTS ET AL; CGL POL#00060233-2; D/O/L: 2/27/16; CLAIM#00045781

Dear Colten:

We have not yet received the coverage denial letter as indicated in your prior email. Please provide us with same.

Also, please see the attached Amended Complaint filed and served on 5/9/16.

Regards,

Josh


Joshua M. Entin, Esq.
Entin & Della Fera, P.A.
633 S. Andrews Avenue
Suite 500
Ft. Lauderdale, FL 33301
(P) 954-761-7201
(F) 954-764-2443
www.entinlaw.com

**NOTICE:** *This e-mail message and all attachments transmitted with it may contain legally privileged and confidential information intended solely for the use of the addressee. If the reader of this message is not the intended recipient, you are hereby notified that any reading, dissemination, distribution, copying, or other use of this message or its attachments is strictly prohibited. If you have received this message in error, please notify the sender immediately by telephone (954-761-7201) or by electronic mail (josh@entinlaw.com), and delete this message and all copies and backups thereof. Thank you.*

**From:** Gina Lopez <gina@combinedmiami.com>
**Date:** Wednesday, May 4, 2016 at 12:55 PM
**To:** "colten.osterman@jamesriverins.com" <colten.osterman@jamesriverins.com>
**Cc:** Chris Rollins <chris.rollins@southbeachgroup.com>, joshua entin <josh@entinlaw.com>, "ginalina226@att.net"

<ginalina226@att.net>
Subject: MUSEUM WALK APTS ET AL; CGL POL#00060233-2; D/O/L: 2/27/16; CLAIM#00045781

Good afternoon Mr. Osterman,

I left you a voicemail message at your office.  The insured contacted me today via email (please see attached email including their attorney's email).  They are very concerned as the insurance company has not yet hired a law firm to defend and time is running out as they were served the Summons on 4/14/16.

Please call me at 305)-728-7622 (my direct line at the office) or on my cell at (305) 582-3629.  I will be leaving the office at 1:30pm to attend a class but you can reach me on my cell via text or email me at ginalina226@att.net

Thank you,

**GINA LOPEZ**
**COMBINED UNDERWRITERS OF MIAMI, INC.**
**PO BOX 528020**
**MIAMI, FL 33152-8020**
**DIRECT LINE: 305/728-7622**
**FAX LINE: 305/599-2343**
**ginalopez@combinedmiami.com**
Like us on Facebook, Follow us on Twitter



## JAMES RIVER INSURANCE

May 5, 2016

*VIA CERTIFIED MAIL*
*RETURN RECEIPT REQUESTED AND*
*ELECTRONIC MAIL:  chris.rollins@southbeachgroup.com*
Chris Rollins
Museum Walk Apts LLC
dba Tradewinds Apartment Hotel
Sunset Apartments LLC
808 Collins Avenue
Miami Beach, Florida 33139

Re:  *West v. South Beach Grp. Hotels, Inc. et al.*  [Case No. 2016-008712-CA-01]
Insurer:          James River Insurance Company
Insured:         Museum Walk Apts LLC dba Tradewinds Apartment Hotel
Policy No:      00060233-2 (eff. 12/01/2015 to 12/01/2016)

Dear Mr. Rollins:

James River Insurance Company ("James River") is in receipt of the complaint against South Beach Hotel, Inc. ("South Beach") and Carlos Victoria ("Victoria") filed in the captioned lawsuit, which alleges damages due to theft of a hotel guests' belongings.  The purpose of this letter is to inform you that based on our review of the complaint as compared to the terms of the captioned policy, James River disclaims coverage.  As further explained below, the conversion of personal belongings is not "property damage" under the policy's insuring agreement and the policy expressly precludes coverage for claims arising out of "conversion" and damage to property in your care or custody.  *If you have not done so already, we strongly encourage you to tender this claim under your commercial property policy and any other policies that potentially afford theft coverage.*

## THE COMPLAINT

On April 14, 2016, Terrance West ("West") filed suit against South Beach Group Hotels, Inc. ("South Beach") and Carlos Victoria ("Victoria") in Circuit Court in Miami-Dade County, Florida, Case No. 2016-008712-CA-01.  The complaint provides that West and a friend were staying at the Metropole South Beach Hotel ("Metropole"), which South Beach owns.  On February 26, 2016, West was approached by two women he had not met before and had a brief conversation with them.  Later that day, without West's permission, the women approached Victoria, who was working at the hotel's front desk, and requested entrance to West's hotel room.  Victoria allegedly made a room key for them and instructed the bellman to escort them to the room.  While in the room, the women stole two Rolex watches.

**Claims Department**
**James River Insurance Company**
6641 West Broad Street, Suite 300 • Richmond, Virginia 23230 • 804.289.2700 • Fax 804.420.1058
www.jamesriverins.com



**EXHIBIT "D"**

Museum Walk Apts LLC dba Tradewinds Apartment Hotel
May 5, 2016
Page 2 of 9

The complaint further alleges that after filing a police report, West heard a knock on the door of his hotel room. When he opened the door, an unidentified man forced his way into the room, made threats towards the lives of both West and his friend, and demanded cash. The unidentified man took a total of $5,000, Christian Louboutin shoes, and other items from the room.

The complaint alleges negligence as against Victoria (Count I) and South Beach (Count II) and seeks $53,129.00, which is the alleged cost of the stolen property.

### THE JAMES RIVER CGL POLICY

James River issued a commercial general liability insurance policy to "Museum Walk Apts LLC dba Tradewinds Apartment Hotel" as the Named Insured, bearing Policy No. 00060233-2 and effective from 12/01/2015 through 12/01/2016 ("Policy"). The principal coverage form is Form No. CG 00 01 12 07, which provides in relevant part:

**COMMERCIAL GENERAL LIABILITY coverage FORM**
**SECTION I – COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. …

   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

   b. This insurance applies to "bodily injury" and "property damage" only if:

      (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

      (2) The "bodily injury" or "property damage" occurs during the policy period; and

Museum Walk Apts LLC dba Tradewinds Apartment Hotel
May 5, 2016
Page 3 of 9

(3)     Prior to the policy period, no insured listed under
Paragraph 1. of Section II – Who Is An Insured and no
"employee" authorized by you to give or receive notice of
an "occurrence" or claim, knew that the "bodily injury" or
"property damage" had occurred, in whole or in part.  If
such a listed insured or authorized "employee" knew,
prior to the policy period, that the "bodily injury" or
"property damage" occurred, then any continuation,
change or resumption of such "bodily injury" or "property
damage" during or after the policy period will be deemed
to have been known prior to the policy period.

2.      **Exclusions**

This insurance does not apply to:

a.      **Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended
from the standpoint of the insured.  This exclusion does not
apply to "bodily injury" resulting from the use of reasonable
force to protect persons or property….

j.      **Damage To Property**

"Property damage" to: …

(4)     Personal property in the care, custody or control of the
insured; …

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to
"property damage" (other than damage by fire) to premises,
including the contents of such premises, rented to you for a
period of 7 or fewer consecutive days.  A separate limit of
insurance applies to Damage To Premises Rented To You as
described in Section III – Limits Of Insurance. …

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to
liability assumed under a sidetrack agreement. …

**SECTION II – WHO IS AN INSURED …**

2.      Each of the following is also an insured:

a.      Your "volunteer workers" only while performing duties related
to the conduct of your business, or your "employees", other than
either your "executive officers" (if you are an organization other
than a partnership, joint venture or limited liability company) or
your managers (if you are a limited liability company), but only

**Museum Walk Apts LLC dba Tradewinds Apartment Hotel**
**May 5, 2016**
**Page 4 of 9**

for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for: ...

(2)  "Property damage" to property:

(a) Owned, occupied or used by,

(b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

b.  Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager....

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

4.  **Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

a.  Primary Insurance

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph c. below.

b.  Excess Insurance

(1)  This insurance is excess over:

(a) Any of the other insurance, whether primary, excess, contingent or on any other basis:

(i) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

Museum Walk Apts LLC dba Tradewinds Apartment Hotel
May 5, 2016
Page 5 of 9

      **(ii)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

      **(iii)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

      **(iv)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.

    **(b)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured by attachment of an endorsement.

**(2)** When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**(3)** When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

    **(a)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

    **(b)** The total of all deductible and self-insured amounts under all that other insurance.

**(4)** We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part....

Museum Walk Apts LLC dba Tradewinds Apartment Hotel
May 5, 2016
Page 6 of 9

SECTION V – DEFINITIONS…

5.      "Employee" includes a "leased worker".  "Employee" does not include a
        "temporary worker"….

13.     "Occurrence" means an accident, including continuous or repeated
        exposure to substantially the same general harmful conditions….

17.     "Property damage" means:

        a.     Physical injury to tangible property, including all resulting loss
               of use of that property.  All such loss of use shall be deemed to
               occur at the time of the physical injury that caused it; or

        b.     Loss of use of tangible property that is not physically injured.
               All such loss of use shall be deemed to occur at the time of the
               "occurrence" that caused it.

        For the purposes of this insurance, electronic data is not tangible
        property.

        As used in this definition, electronic data means information, facts or
        programs stored as or on, created or used on, or transmitted to or from
        computer software, including systems and applications software, hard or
        floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or
        any other media which are used with electronically controlled equipment.

The policy includes an endorsement titled "Additional Named Insured Endorsement" bearing
Form No. AP1005US 07-05, which provides in relevant party:

    The persons or entities listed in the Schedule below are included as Named
    Insured(s) under this policy:

### Schedule

| Name: | Retroactive Date: If no date is shown below, the Retroactive date shown in the Declarations Page of the Policy shall apply: |
|---|---|
| Sunbrite Apartments LLC | |
| Metropole Hotel Apartments LLC | |
| Phillard Apartment Hotel LLC DBA Riviera Hotel | |

**Claims Department**
**James River Insurance Company**
6641 West Broad Street, Suite 300 ● Richmond, Virginia 23230 ● 804.289.2700 ● Fax 804.420.1058
www.jamesriverins.com

Museum Walk Apts LLC dba Tradewinds Apartment Hotel
May 5, 2016
Page 7 of 9

| Alan Lieberman | |
|---|---|
| South Beach Group Hotels, Inc. ... | |

The policy includes an endorsement titled "Common Policy Exclusions" bearing Form No. AP2029US 12-10, which provides in part:

### DUTY TO DEFEND EXCLUSION

Where there is no coverage under this policy, there is no duty to defend.

### Professional Liability Exclusion

Professional liability, malpractice, errors, omissions, or acts of any type including rendering or failure to render any type of professional service is not covered under this policy nor are any expenses nor any obligation to share damages with or repay anyone else who must pay damages from same, unless such coverage is specifically endorsed by this policy.

The policy additionally includes an endorsement titled "Fiduciary Exclusion" bearing Form No. CG2131US 04-03, which provides:

This policy does not apply to any claim arising out of the:

1.    Coercion, conversion or misappropriate of others; funds or property;

2.    Any dishonest, fraudulent, criminal, malicious acts or omissions of the insured partner or employee or any person for whom you are legally responsible; or

3.    Any activities or operations performed in the capacity of a fiduciary.

### RESERVATION OF RIGHTS

James River disclaims coverage.  James River first disclaims coverage because the complaint does not allege "bodily injury" or "property damage" caused by an "occurrence" as required for coverage under the insuring agreement.  Rather, the complaint is solely to recover for stolen personal belongings.  The insuring agreement is not satisfied.

Beyond the insuring agreement, several exclusions also apply to preclude coverage.  James River disclaims coverage under the Fiduciary Exclusion, which excludes coverage for any claim arising out of conversion or misappropriation of others' funds or property.  Again, the entire basis of the lawsuit is conversion of the plaintiff's property.

James River further disclaims under Exclusions, j.(4), which excludes coverage for property damage to personal property in the care, custody or control of the insured.  Here, the stolen

**Museum Walk Apts LLC dba Tradewinds Apartment Hotel**
**May 5, 2016**
**Page 8 of 9**

belongings were in South Beach's care at the time of the theft. James River additionally disclaims coverage under Exclusions a. Expected or Intended Injury, to the extent the theft was expected or intended and under the Professional Liability Exclusion to the extent the claim arises out of the rendering or failure to render professional services.

With respect to defendant Victoria, James River reserves the right to disclaim coverage to the extent he was not acting within the scope of his employment at the time of the incident and, consequently, does not qualify as an insured, and to the extent the claim arises out of damage to property in South Beach's or its employees care, custody or control.

Finally, James River disclaims under the Duty to Defend exclusion in the Combined Policy Exclusions endorsement. Under this provision, James River has no obligation to provide a defense where there is no coverage under the policy.

To the extent other insurance applies, James River further disclaims coverage.

**RESERVATION OF RIGHT TO AMEND**

James River reserves all its rights and defenses under the policy. Nothing in this letter should be construed as a waiver or surrender of any terms, limitations, exclusions, conditions or agreements. Nor should this letter be considered an exhaustive recitation of all the potential coverage issues or provisions of the policy that might apply. James River specifically reserves the right to withdraw, supplement, or modify any part of this letter.
If you have any additional information that you feel may be relevant to our coverage decision, please immediately forward it to our attention so we can consider it. Also, if the complaint is ever amended, please notify us at that time so we can re-evaluate our position based on the new allegations.

If you have any questions regarding this letter, please feel free to contact me.

Sincerely,

Colten Osterman
Claims Examiner
James River Insurance Company

**Applicable in Florida**

**Any person who knowingly and with the intent to injure, defraud or deceive any Insurance Company files Statement of Claim containing any false, incomplete or misleading information is guilty of a felony.\***

**Claims Department**
**James River Insurance Company**
6641 West Broad Street, Suite 300 ● Richmond, Virginia 23230 ● 804.289.2700 ● Fax 804.420.1058
**www.jamesriverins.com**

Museum Walk Apts LLC dba Tradewinds Apartment Hotel
May 5, 2016
Page 9 of 9

*In Florida – Third Degree Felony

cc:    Via Electronic Mail

Paulette Jones
R-T Specialty, LLC (Brandon)
510 Vonderburg Drive #214
Brandon, FL 33511
Paulette.jones@rtspecialty.com

**Claims Department**
**James River Insurance Company**
6641 West Broad Street, Suite 300 ● Richmond, Virginia 23230 ● 804.289.2700 ● Fax 804.420.1058
**www.jamesriverins.com**